IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MIAMI VALLEY FAIR HOUSING CENTER, INC. | : | |
| | : | Case No. 3:10-cv-83 |
| Plaintiff, | : | |
| vs. | : | |
| | : | JUDGE WALTER HERBERT RICE |
| THE CONNOR GROUP, et al., | : | |
| Defendants | : | |

---

**DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT THE CONNOR GROUP AS TO LIABILITY (DOC. #12)**

---

Plaintiff, Miami Valley Fair Housing Center, Inc. ("MVFHC"), filed suit against The Connor Group and two of its employees, alleging that some of The Connor Group's advertisements for apartment rentals violated federal and state fair housing laws. Plaintiff alleged that some advertisements were designed to discourage families with children from renting the apartments, and that other advertisements indicated an illegal preference on the basis of sex. This matter is currently before the Court on Plaintiff's Motion for Partial Summary Judgment Against Defendant The Connor Group as to Liability. Doc. #12. For the reasons stated below, that motion is overruled.

## I. Background and Procedural History

The Connor Group owns and manages numerous apartment complexes throughout the United States, including Stonebridge Apartment Homes in Beavercreek, Ohio, and Chesapeake Landing Apartments in Dayton, Ohio.  Compl. ¶ 4.  MVFHC is a private, non-profit corporation that works to eliminate discrimination in housing.  It occasionally monitors advertising to ensure compliance with fair housing laws.  Compl. ¶ 6.  Jim McCarthy is the President and CEO of MVFHC.  12/29/10 McCarthy Aff. ¶¶ 1-2; Ex. A to Mot. Partial Summ. J.

On April 4, 2009, an MVFHC staff member discovered a Craigslist[1] posting for Chesapeake Landing, promoting a "Great Bachelor Pad," ideal for "any single man looking to hook up."  12/29/10 McCarthy Aff. ¶ 6; Ex. 1 to McCarthy Aff. On May 8, 2009, MVFHC filed a complaint with the Department of Housing and Urban Development ("HUD"), alleging that the advertisement discriminated on the basis of familial status and sex.  12/29/10 McCarthy Aff. ¶ 7.  The complaint was referred to the Ohio Civil Rights Commission ("OCRC") and, on November 12, 2009, the OCRC found probable cause to believe that the advertisement discriminated on the basis of familial status and sex in violation of Ohio Revised Code §§ 4112.02(H) and (J).  12/29/10 McCarthy Aff. ¶ 7; Ex. 2 to McCarthy Aff.

---

[1] Craigslist is an online network featuring free classified advertisements.

2

MVFHC subsequently discovered the following Craigslist advertisements for Chesapeake Landing: (1) a May 18, 2009, ad stating, "No Matter What They Say, Size Does Matter!"; (2) a May 18, 2009, ad stating, "Wanna Be on TOP?!!"; and (3) an April 4, 2009, ad stating, "You know you wanna . . . " 12/29/10 McCarthy Aff. ¶ 16; Exs. 10-12 to McCarthy Aff.

MVFHC also discovered the following Craigslist advertisements for Stonebridge Apartments: (1) a January 25, 2010, ad that read, "Single?? . . . Mingle at The Greene!!";[2] (2) a February 6, 2010, ad that read, "Hook-Up Here!"; (3) a February 9, 2010, ad that read, "It's That Time of the Month Again . . . Feeling a Different Kind of Cramp Though?"; (4) a February 11, 2010, ad that read, "Not Getting Along With Your Significant Other?  It's Time to Make a Clean Break!"; (5) a February 10, 2010, ad stating, "E-Harmony thinks we are a match!"; (6) a February 10, 2010, ad that read, "Happy Hour!!"; (7) a February 10, 2010, ad stating, "Size DOES Matter!! And We Measure Up!!"  12/29/10 McCarthy Aff. ¶¶ 8-15; Exs. 3-9 to McCarthy Aff.

On March 5, 2010, MVFHC filed suit against The Connor Group and against Rachel Underwood and Krissy Jacob, Connor Group's employees who allegedly placed the advertisements on Craigslist.  MVFHC alleged that by making advertising statements that discouraged families with children and indicated a

---

[2] The Greene is an area containing shopping, restaurants, and entertainment.

preference for single people or those of a particular gender, Defendants violated the Fair Housing Act ("FHA"), 42 U.S.C. § 3604, and Ohio Revised Code § 4112.02(H).  MVFHC seeks declaratory and injunctive relief, as well as compensatory and punitive damages, costs, and attorney fees.

On January 6, 2011, MVFHC filed a Motion for Partial Summary Judgment Against Defendant The Connor Group as to Liability.  Doc. #12.  Plaintiff argued that the following advertisements, placed by Defendant on Craigslist, are facially discriminatory and indicate an illegal preference for people without children:

- ♦ "Great Bachelor Pad" great for "any single man looking to hook up."
- ♦ "No Matter What They Say, Size Does Matter!"
- ♦ "Wanna Be on TOP?!!"
- ♦ "You know you wanna . . . "
- ♦ "Single?? . . . Mingle at The Greene!!"
- ♦ "Hook-Up Here!"
- ♦ "Not Getting Along With Your Significant Other?  It's Time to Make a Clean Break!"
- ♦ "E-Harmony thinks we are a match!"
- ♦ "Happy Hour!!"
- ♦ "Size DOES Matter!! And We Measure Up!!"

Plaintiff also argued that the following advertisements, placed by Defendant on Craigslist, are facially discriminatory and indicate an illegal preference based on sex:

- ♦ "It's That Time of the Month Again . . . Feeling a Different Kind of Cramp Though?"
- ♦ "Great Bachelor Pad" ideal for "any single man looking to hook up."

On January 31, 2011, with leave of Court, MVFHC filed a supplemental affidavit of Jim McCarthy.  It cited two additional advertisements for Stonebridge

4

Apartments that allegedly discriminate on the basis of familial status: (1) a February 6, 2010, ad that read, "Single?? . . . Potentially Meet the Love of Your Life Here!!"; and (2) a February 12, 2010, ad stating "Want to Have a Good Time? . . . do you like to party with your friends, but do not want to risk a DUI? Come live next to The Greene . . . where you can party it up, and walk, crawl or be dragged home safely . . . right behind The Greene!!" 1/31/11 McCarthy Aff. ¶ 4; Exs. 1, 2 to McCarthy Aff.

On March 7, 2011, Defendants Rachel Underwood and Krissy Jacob were dismissed with prejudice pursuant to a stipulation of the parties, leaving The Connor Group as the only remaining defendant. On May 3, 2011, again with leave of Court, MVFHC submitted Anita Schmaltz's Affidavit in support of its pending motion. Ms. Schmaltz attached several more advertisements, posted by Defendant on Craigslist, that she believed discriminated against a protected class.

In its Memorandum in Opposition, filed on May 17, 2011, Defendant argued that genuine issues of material fact preclude summary judgment on Plaintiff's claims. Doc. #35. Defendant denies that the ads are facially discriminatory, and argues that, although some of the ads may be more likely to attract certain people than others, the ads do not indicate an unlawful preference or limitation on the basis of familial status or sex.

In its Reply Brief, Plaintiff appears to somewhat narrow the scope of its motion. Plaintiff now argues that only three of the advertisements are facially

discriminatory, indicating an illegal preference on the basis of familial status or sex:

1. "Great Bachelor Pad! . . . Our one bedroom apartments are a great bachelor pad for any single man looking to hook up."
2. "Want to have a good time? . . . Do you like to party with your friends, but do not want to risk a DUI?  Come live next to The Greene . . . where you can party it up, and walk, crawl or be dragged home safely . . . right behind the Greene."
3. "It's That Time of the Month Again . . . Feeling a Different Kind of Cramp Though?"

Doc. #58, at 6-8.  Plaintiff also argues that ordinary readers cannot dispute that

Defendant's advertisements, when read as a whole, constitute a violation of the

FHA.

## II.    Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party always bears the initial

responsibility of informing the district court of the basis for its motion, and

identifying those portions of the record which it believes demonstrate the absence

of a genuine issue of material fact.   *Id.* at 323; *see also Boretti v. Wiscomb*, 930

F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must

present evidence that creates a genuine issue of material fact making it necessary

to resolve the difference at trial."  *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241,

1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250

6

(1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Mich. Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to

7

the fact-finder.  10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990); *see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561 (7th Cir. 1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992), *cert. denied*, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ."). Thus, a court is entitled to rely, in determining whether a genuine dispute of material fact exists on a particular issue, only upon those portions of the record specifically called to its attention by the parties.

## III.    Analysis

### A.    Standing

The threshold issue in this case is whether Plaintiff MVFHC has standing to pursue this action on its own behalf. Plaintiff has the burden of proof on this issue. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Article III, § 2 of the United States Constitution limits federal jurisdiction to actual "cases" and "controversies." "The concept of standing is part of this limitation." *Simon v.*

*Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976).  A plaintiff has standing, under Article III, to pursue a claim if the plaintiff has a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  *Allen v. Wright*, 468 U.S. 737, 751 (1984).[3]

An organization seeking to establish standing on its own behalf must show more than "simply a setback to the organization's abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (citing *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972)).  The Supreme Court has held that a fair housing organization has suffered a "concrete and demonstrable injury," sufficient to establish standing to pursue an FHA claim, if the defendant's allegedly wrongful conduct causes the organization to devote significant resources to identify and counteract the illegal practices.  *See id.*

In this case, Jim McCarthy, President and CEO of MVFHC, has submitted an affidavit stating as follows:

> MVFHC's resources were diverted as a result of its investigation and this lawsuit, and its mission frustrated by Defendant The Connor Group's actions.  Because of time spent monitoring the advertisements by this Defendant, I and other members of my staff were precluded from doing other fair housing activities.  MVFHC contemporaneously keeps track of our staff time on various projects. Despite filing an administrative action regarding one of the

---

[3]  Typically, a plaintiff must also establish certain "prudential standing" requirements.  However, because Congress intended standing under the FHA to extend to the full limits of Article III, there is no need to consider prudential standing requirements in this case.  *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982).

9

advertisements, The Connor Group did not appear to change the types of illegal ads they placed on Craigslist. MVFHC expended thousands of dollars worth of staff time in pre-litigation monitoring of The Connor Group and in other efforts designed to combat their discriminatory advertising, such as developing and presenting programs in the community.

12/29/10 McCarthy Aff. ¶ 17.

Citing *Equal Rights Center v. Post Properties, Inc.*, 633 F.3d 1136 (D.C. Cir. 2011), Defendant argues that Plaintiff lacks standing because its alleged damages were self-inflicted.[4] According to Defendant, Plaintiff voluntarily chose to divert its resources to investigate Defendant's advertising practices, and to pursue this litigation. In *Equal Rights Center*, the court noted that the mere diversion of resources does not automatically confer standing. The organization must also show that it undertook those efforts *in response* to the effects of the alleged discrimination. *Id.* at 1140. The court found that Equal Rights Center had failed to make such a showing, and concluded that "ERC's diversion of resources to . . . Post's alleged discriminatory practices is a 'self-inflicted' injury, not one attributable to Post." *Id.* at 1142.

---

[4] Defendant also cites to *Fair Housing Advocates Association, Inc. v. Chance*, 2008 WL 2229530, 2008-Ohio-2603 (Ohio Ct. App. 2008), for the proposition that fair housing organizations are not "aggrieved persons" and therefore lack standing to bring claims under Ohio's fair housing law. Plaintiff notes, however, that the holding in *Chance* was superseded by statute, as explained by Judge Gwin in *Housing Advocates, Inc. v. Berardi & Partners, Inc.*, No. 1:10-cv-790 (N.D. Ohio Nov. 29, 2010). *See* Ex. J to Pl.'s Reply, Doc. #58.

In the Court's view, this case is factually distinguishable from *Equal Rights Center*. McCarthy specifically states that MVFHC's efforts were designed to combat Defendant's discriminatory advertising, and that MVFHC developed and presented community programs in response to Defendant's alleged wrongdoing. Moreover, under current Sixth Circuit law, the alleged injuries are clearly sufficient to confer standing.

As the court explained in *Fair Housing Council, Inc. v. Village of Olde St. Andrews, Inc.*, 210 F. App'x 469 (6th Cir. 2006), some circuits have held that, "to show standing, an organization must demonstrate that it suffered a concrete injury that is completely independent from the economic and non-economic costs of the litigation." *Id.* at 474. Other circuits require only that the organization show that it "diverted resources toward litigation to counteract the defendant's housing discrimination." *Id.* The Sixth Circuit follows this more lenient approach.

In *Housing Opportunities Made Equal, Inc. v. Cincinnati Enquirer, Inc.*, 943 F.2d 644 (6th Cir. 1991), a fair housing organization alleged that defendant's advertising, in which nearly all of the human models were white, deterred potential renters from seeking housing in certain apartment complexes. Plaintiff alleged that this required it "to devote resources to investigate and negate the impact of these advertisements." *Id.* at 646. The court concluded that this allegation was sufficient to confer standing. *Id.*

11

In *Hooker v. Weathers*, 990 F.2d 913 (6th Cir. 1993), a fair housing organization sent a "tester" to investigate a complaint that a trailer park was discriminating on the basis of age and familial status.  The organization confirmed the allegations in the complaint and filed suit.  Again, the Sixth Circuit found that the alleged injury was sufficient to establish organizational standing.  *Id*. at 915.

Likewise, in *Hughes v. Peshina*, 96 F. App'x 272 (6th Cir. 2004), a fair housing organization investigated a complaint of discrimination based on familial status, and confirmed that defendants were engaging in discriminatory practices.  The Sixth Circuit held that the organization "devoted its efforts to investigating whether [defendants] had violated the law, thus diverting its resources away from the other housing services it provides and frustrating its mission of insuring fair housing practices.  It has thus alleged a distinct and palpable injury and has sufficiently established its standing."  *Id.* at 274.

The Sixth Circuit revisited each of these decisions in *Fair Housing Council*. In that case, a nonprofit fair housing corporation noticed that certain newly-constructed multifamily housing developments appeared to be inaccessible to disabled individuals.  The organization therefore trained "testers" and sent them to the property.  The testers identified numerous FHA violations, and the organization filed suit.  Defendants challenged the organization's standing, arguing that it had failed to demonstrate any injury, independent of the litigation, that was fairly traceable to the allegedly discriminatory conduct.  Defendants urged the court to

12

overturn *Hooker*, but the panel noted that one panel cannot overturn the decision of another panel.  *See* 210 F. App'x  at 476.

Defendants also sought to distinguish *Hooker* by noting that the Fair Housing Council received a HUD grant for the express purpose of using testers to investigate housing discrimination.  Defendants argued that because the money had already been allocated for this purpose, the Fair Housing Council suffered no concrete injury in training testers and sending them to the property.  The Sixth Circuit rejected this argument, stating, "almost anytime an organization . . . funds a particular project   . . ., the pool of resources that it has to combat other instances of discrimination grows smaller."  *Id.* at 477.[5]

The Sixth Circuit also rejected Defendants' argument that, because the Fair Housing Council had initiated the investigation, the alleged injury was not fairly traceable to Defendants' conduct.  The court noted that "[r]egardless of whether an organization learns of potential discrimination through independent complaints or through its own observations, any action it takes in combating that discrimination is fairly traceable to the defendant's discriminatory acts."  *Id.* at 478.  The court

---

[5]  In a similar vein, Defendant argues MVFHC receives Fair Housing Initiative Program grants from HUD to assist in carrying out its mission, and HUD regularly permits MVFHC to keep all settlement money received.  McCarthy Dep. at 12-16, 24-30.  Defendant therefore argues that, rather than being injured, Plaintiff has instead benefitted from its investigatory efforts.  The Court rejects this argument for the reasons expressed in *Fair Housing Council.*

concluded that the organization had standing to bring the action. *Id.* at 476.[6]

Based on current Sixth Circuit case law and on McCarthy's affidavit, the Court finds that Plaintiff has asserted an injury-in-fact fairly traceable to the defendant's allegedly unlawful conduct.  Moreover, that injury is likely to be redressed by the requested relief.  Plaintiff therefore has standing to pursue the FHA claims on its own behalf.

**B.    Admissibility of McCarthy Affidavits**

Before moving on to the merits of Plaintiff's claims, the Court must resolve one evidentiary matter.  Defendant argues that the Court cannot consider certain paragraphs of Jim McCarthy's affidavits, dated December 29, 2010, and January 31, 2011, because they are not based on "personal knowledge" as required by Federal Rule of Civil Procedure 56(c)(4).

The vast majority of the statements at issue simply refer to the dates on which Defendant placed certain advertisements on Craigslist.  *See* 12/29/10 Aff. at ¶¶ 9-16; 1/31/11 Aff. at ¶¶ 3-4.  McCarthy testified that he reviewed each of the ads at issue.  McCarthy Dep. at 55-57.  Therefore, he was competent to testify to the fact that Defendant made the statements contained therein.  Moreover,

---

[6]  In a concurring opinion, Judge Ryan questioned the wisdom of the *Hooker* decision.  He wrote, "[i]t strikes me as obvious that a non-profit corporation created for the purpose, *inter alia*, of bringing lawsuits to enforce the FHA, has not suffered a 'concrete and demonstrable *injury* to [its] activities,' (emphasis added), simply by conducting one of its activities – finding suable defendants.  But *Hooker* has held otherwise, and it is a binding precedent I am not free to ignore and cannot distinguish in any meaningful way."  *Fair Housing Council*, 210 F. App'x at 482.

Defendant has admitted that its employees posted these particular ads on Craigslist. Answer ¶¶ 11-12. Therefore, since these statements are otherwise admissible under Federal Rule of Evidence 801(d)(2) as an admission by a party-opponent, there is no reason why the Court should not consider McCarthy's statements.

Defendant also argues that McCarthy lacks sufficient personal knowledge concerning his statements that MVFHC observed these advertisements on Craigslist and took action to remedy the alleged discrimination, 12/29/10 Aff. at ¶ 4, and that MVFHC calculated the percentage of Craigslist housing ads that were placed by Defendant during a 6-month time period, 1/31/11 Aff. at ¶ 5. The Court rejects this argument. As the President and CEO of MVFHC, McCarthy is charged with knowledge of its activities. *See AGI Realty Serv. Group, Inc. v. Red Robin Int'l, Inc.*, No. 94-3911, 1996 WL 143465, at *4 (6th Cir. Mar. 28, 1996) ("Corporate officers are considered to have personal knowledge of the acts of their corporations and an affidavit setting forth those facts is sufficient for summary judgment.").

Defendant also objects to McCarthy's legal conclusions that the advertisements were "illegal," "discriminatory," and "stated a preference for certain people." 12/29/10 Aff. at ¶¶ 4, 17; 1/31/11 Aff. at ¶ 6. The Court agrees that statements are inadmissible and will not be considered.

15

Finally, Defendant objects to McCarthy's statement that the OCRC found that Defendant's "bachelor pad" advertisement discriminated on the basis of familial status and gender.  12/29/10 Aff. at ¶ 7.  McCarthy acknowledged in his deposition that the OCRC's "probable cause" finding is not the equivalent of a finding of discrimination.  McCarthy Dep. at 171-73.  The Court will take this limitation into consideration in evaluating his affidavit.

### C.    Merits of Claims

Plaintiff alleges that Defendant's advertising indicates a preference or limitation based on familial status and sex, in violation of federal and state fair housing statutes.  Plaintiff maintains that because there is no genuine issue of material fact, summary judgment in its favor on the issue of liability is warranted.  For the reasons stated below, the Court disagrees.

### 1.    Relevant Law

The Fair Housing Act ("FHA") provides that "it shall be unlawful . . . to make, print, or publish . . . any notice, statement, or advertisement, with respect to the . . .  rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin . . ."  42 U.S.C. § 3604(c).

In a similar vein, Ohio law states that "[i]t shall be an unlawful discriminatory practice . . . for any person to . . .[p]rint, publish, or circulate any statement or advertisement . . . relating to the . . . rental . . . of any housing accommodations   . . . that indicates any preference, limitation, specification, or discrimination based

16

upon race, color, religion, sex, military status, familial status, ancestry, disability, or national origin . . ."  Ohio Rev. Code § 4112.02(H)(7).

State law claims of discrimination are interpreted in accordance with analogous federal statutes. *See Ohio Civil Rights Comm'n v. Harlett*, 132 Ohio App.3d 341, 344, 724 N.E.2d 1242, 1244 (Ohio Ct. App. 1999).  The Court will, therefore, analyze the federal and state claims together.

A § 3604(c) claim has three elements.  A plaintiff must prove that: (1) defendant made a statement; (2) the statement was made with respect to the sale or rental of a dwelling; and (3) the statement indicated a preference, or limitation or discrimination on the basis of a protected class. *See White v. United States Dep't of Hous. & Urban Dev.*, 475 F.3d 898, 904 (7th Cir. 2007).  In this case, there is no doubt that Defendant published the three statements at issue, and that those statements were made with respect to the rental of a dwelling.  At issue is whether those statements indicated an illegal preference or limitation or discrimination based on familial status or sex.

A plaintiff may establish a violation of § 3604(c) either by proving an actual intent to discriminate, or by proving that an advertisement indicates to an "ordinary reader" that a particular class of persons is preferred or disfavored. *See Cincinnati Enquirer*, 943 F.2d at 646; *Jancik v. Department of Hous. & Urban Dev.*, 44 F.3d

17

553, 556 (7th Cir. 1995).[7]  Plaintiff in this case relies on the "ordinary reader"

method of proof.  As explained in *White*,

> The inquiry under this objective standard is whether the alleged
> statement would suggest to an "ordinary [reader]" that a person with
> a particular familial status is preferred or disfavored for the housing in
> question. *See Jancik*, 44 F.3d at 556. The ordinary [reader] "is neither
> the most suspicious nor the most insensitive of our citizenry." *Id.* at
> 556 n.4 (citing *Ragin*, 923 F.2d at 1002).

*White*, 475 F.3d at 905 -906.

A plaintiff relying on the "ordinary reader" standard is not required to prove

discriminatory intent, although the defendant's intent may be relevant.  The

message conveyed to the "ordinary reader" is the "touchstone" of the inquiry.  *See*

*Ragin v. New York Times Co.*, 923 F.2d 995, 1000 (2d Cir.1991).  Section

3604(c) prohibits not only blatant limitations such as "whites only" or "no

children."  It also prohibits more subtle messages that suggest an impermissible

preference.  The relevant question is whether the advertisement would discourage

an ordinary reader of a protected class from answering the ad.  *See id.* at 999-

1000.  "[T]his question is one that the factfinder can answer by viewing the ads

and the defendants' conduct and then applying common sense."  *Ragin v. Harry*

*Macklowe Real Estate Co.*, 6 F.3d 898, 906 (2d Cir. 1993).

---

[7]  Contrary to Plaintiff's suggestion, the traditional burden-shifting paradigm
does not apply to § 3604(c) claims. *See Pack v. Fort Washington II*, 689 F.
Supp.2d 1237, 1245 (E.D. Cal. 2009).

## 2.    Genuine Issues of Material Fact Preclude Summary Judgment

In its reply brief, Plaintiff argues that it is entitled to summary judgment on

the issue of liability because three of Defendant's advertisements are "facially

discriminatory," indicating an illegal preference or limitation based on familial status

or sex:

- ◆    "Great bachelor pad . . . Our one bedroom apartments are a great bachelor pad for any single man looking to hook up."

- ◆    "Want to have a good time? . . . Do you like to party with your friends, but do not want to risk a DUI?  Come live next to The Greene . . . where you can party it up, and walk, crawl, or be dragged home safely . . . right behind the Greene!!"

- ◆    "It's That Time of the Month Again . . . Feeling a Different Kind of Cramp Though?"[8]

A "facially discriminatory" ad is one that expressly states an illegal limitation

or preference.  Examples would include "No Children," "No Blacks," or "Women

Only."  Such ads constitute per se violations of § 3604(c).  In cases involving

facially discriminatory ads, courts have not hesitated to grant summary judgment in

---

[8]  Plaintiff maintains that the Court should look only at the posting title, or heading, of the advertisement.  According to Plaintiff, the posting title is the "gateway" to the rest of the online advertisement.  If a reader is discouraged by the posting title, the reader will not bother to click to open the remainder of the ad. Defendant, however, notes that the Sixth Circuit has held that "[a]n advertisement must be considered in its totality."  *Cincinnati Enquirer*, 943 F.2d at 647 n.2.  In the Court's view, this is true regardless of whether the advertisement is in print or posted online.  In either case, the reader looks to the "headline" before determining whether to proceed and read the remainder of the advertisement.  The Court therefore finds that it must look at the entire ad to determine whether an ordinary reader would find that a particular class of persons is preferred or disfavored.

19

favor of the plaintiff.  *See, e.g., Blomgren v. Ogle*, 850 F. Supp. 1427, 1440 (E.D.

Wash. 1993) (granting summary judgment where landlord stated that "no children"

were allowed in the apartments).

    The three advertisements at issue here, however, are not facially

discriminatory.  Although they are clearly *targeted* at particular sub-sets of the

population, they contain no express preferences or limitations.  The Court therefore

finds that the ads in question do not constitute per se violations of § 3604(c).[9]

Defendant correctly notes that Plaintiff has pointed to no cases in which similar

advertising has been found to be discriminatory as a matter of law.

    The question then becomes whether an "ordinary reader" would find that the

three advertisements suggest that a person in a particular class is preferred or

disfavored for the housing in question.  Genuine issues of material fact preclude

summary judgment on this issue.  Defendant maintains that the question of how an

"ordinary reader" would interpret the advertisements is inherently a jury question.

The Court agrees.  The Court notes that both parties have submitted affidavits and

_____

    [9] Defendant argues that Plaintiff's broad interpretation of the FHA -- in
which phrases that arguably target women or men, for example, are deemed to be
"per se" violations of the FHA -- would run afoul of the First Amendment.
Defendant urges the Court to avoid any construction of the FHA that would
conflict with the Constitution.
    In response, Plaintiff argues only that illegal advertising is unprotected
commercial speech.  *See Ragin*, 923 F.2d at 1002-03 (holding that publication of
ads violating FHA is not protected commercial speech).
    The threshold question, however, is whether Defendant's advertisements
violate the FHA.  Because the Court has found no per se violations of § 3604(c),
the Court need not resolve the constitutional question.

deposition testimony from their employees, expressing their opinions about whether particular advertisements at issue violate the FHA. In the Court's view, because these individuals work in the housing industry and are familiar with the claims in this lawsuit, their opinions are not very helpful in determining what the "ordinary reader" would think about the advertisements. *See Ragin*, 6 F.3d at 906 (noting that the district court gave limited weight to plaintiffs' testimony because of their commitment to the cause).

### a. "Bachelor Pad" Advertisement

Plaintiff maintains that the "bachelor pad" advertisement discriminates on the basis of familial status and sex. According to Plaintiff, it clearly and unambiguously indicates a preference for a tenant who is unmarried and male. But as Defendant notes, *marital* status is not a protected class under either the FHA or the law of Ohio. Therefore, the fact that a "bachelor" is, by definition, unmarried, is of no concern whatsoever. The FHA does prohibit discrimination on the basis of "familial status," defined as "one or more individuals (who have not attained the age of 18 years) being domiciled with" a parent or legal custodian. 42 U.S.C. § 3602(k). However, since it is not uncommon for an unmarried man to be the parent or legal custodian of one or more children, this advertisement for a "bachelor pad" does not *require* the conclusion that Defendant prefers to rent to individuals without children.

Nor does it require the conclusion that the landlord prefers to rent to men

instead of women.  Advertising, by its very nature, targets certain groups of people.  As one court has aptly noted, "[m]ost advertisements will tempt some and deter others."  *Metropolitan Milwaukee Fair Housing Council v. Labor & Indus. Review Comm'n*, 496 N.W.2d 159, 162 (Ct. App. Wis. 1992).  The question is not whether a particular advertisement dissuades some potential renters from applying, but rather "whether such dissuasion is the product of any discriminatory statement or indication in the advertisement."  *Id.*

In *Metropolitan Milwaukee Fair Housing Council*, the advertisement at issue stated that the 2-bedroom cottage was "[i]deal for couple."  The ad was challenged as violating a Wisconsin law that prohibited discrimination based on marital status.  The court noted that the language of the ad does not "disprefer" single people.  It simply recites the landlord's opinion that the property is best suited to the needs of a couple:

> We see such information as helpful to – not discriminatory against – a potential renter who, after reading the advertisement, will decide whether to pursue the rental opportunity. . .
>
> The MMFHC argues that the conventional meaning of the word "couple" does not embrace a single person. We agree. However, this argument misses the focus of [the] advertisement. *Ragin* holds that "the touchstone is ... the message." *Id.* at 1000. Here, *the focus of the message is the suitability of the property to the renter – not the acceptability of the renter to the owner.*

*Id.* (emphasis added).[10]

_____

[10]  In a concurring opinion, one judge discouraged complaints like this, which
(continued...)

In a similar manner, although the conventional meaning of the word "bachelor" does not encompass a woman, the clear focus of the advertisement "is the suitability of the property to the renter — not the acceptability of the renter to the owner." *Id.* The posting title in this particular ad may not necessarily grab a woman's attention, and a woman reading only the posting title may not bother to open the ad. However, if she did open it, a woman could very well decide that a one-bedroom "bachelor pad" with a washer and dryer hook-up would perfectly suit her needs, and nothing in the advertisement requires the conclusion that women are unwelcome tenants in this particular apartment complex.[11]

For these reasons, the Court finds that the "ordinary reader" would not necessarily conclude that this ad indicates an unlawful preference or limitation based on familial status or sex.

### b.  "Good Time"/DUI Advertisement

This ad clearly targets people who like to party. Plaintiff maintains that it would discourage anyone with children from renting an apartment at this complex. According to Plaintiff, the ordinary reader of this ad would have to conclude that Defendant prefers to rent to people without children. The Court rejects this

---

[10](...continued)
"have no basis in fact and only trivialize genuine efforts to end discrimination." *Metropolitan Milwaukee Fair Housing Council*, 496 N.W.2d at 163.

[11]  Common sense dictates that an apartment complex that advertises that it is a great place for any single man "looking to hook up" would seek to attract both men and women.

argument.  Although many parents may be dissuaded from wanting to raise their children in an apartment complex promoting this kind of "party" atmosphere, such dissuasion is not the result of any discriminatory statement in the advertisement. In fact, children are not even mentioned.

The message of the advertisement focuses on the fact that the apartment complex is conveniently located adjacent to The Greene.  People with children are just as likely as people without children to see this as an advantage; both groups undoubtedly share the same concerns about being arrested for driving while under the influence of alcohol.  Nothing in this advertisement requires the conclusion that Defendant prefers to rent to people without children.

<blockquote>

c.      "It's That Time of the Month Again" Advertisement
</blockquote>

Plaintiff argues that this advertisement obviously refers to a woman's menstrual cycle, and that common sense dictates that men would be discouraged from responding to this ad.  Again, the ad may target women, and men who read only the posting title may be dissuaded from opening the ad.  However, if they did open it, they would find that the reference to a "cramp" refers to not having enough space in an apartment.  Ex. 5 to 12/29/10 McCarthy Aff.  This is a problem shared by men and women alike.  Because nothing in the ad itself suggests that men are not welcome at this apartment complex, the ordinary reader would not necessarily conclude that the landlord prefers to rent only to women.

### d.    Advertisements As a Whole

Plaintiff also argues that ordinary readers could not dispute that Defendant's advertisements, read as a whole, would discourage people with children from pursuing rental opportunities at the properties in question.   Some of Defendant's ads specifically target singles; others target people who like to party.  Several of the posting titles contain sexual innuendoes such as "Hook Up Here!," "Size Matters," and "Wanna Be On Top?"  Plaintiff maintains that these ads are clearly directed at "single persons looking to engage in promiscuous behavior," and depict a living environment that is "clearly inappropriate for families."  Doc. #12, at 9.  According to Plaintiff, these ads, viewed as a whole, suggest to the ordinary reader that families with children are not welcome at these apartment complexes.

The Court agrees that the ordinary reader, after viewing these ads, might conclude that these apartment complexes are not family-friendly.  Certainly, there are some parents who would be uncomfortable raising their children in this kind of an environment and would be dissuaded from submitting a rental application.[12]

However, the ordinary reader may also find that Defendant's advertisements, as a whole, do not suggest an illegal preference for people without children.  Not all parents will be offended by this kind of advertising.  The ordinary reader may view the posting titles as nothing more than a clever way to grab the

---

[12]  The Court notes that these advertisements may be equally offensive to some people without children.

25

consumer's attention.  People with children can certainly appreciate large apartments ("Size Matters!"), apartments on the top floor ("Wanna Be On Top?"), and apartments with washer and dryer hook-ups ("Hook Up Here").  Moreover, single parents looking for a long-term relationship may want to live in an apartment complex filled with other singles.

Because the advertisements are subject to more than one interpretation, a jury will have to determine whether the ads, as a whole, suggest that Defendant prefers not to rent to people with children.  In making that determination, the jury is not necessarily limited to looking at the handful of advertisements identified by Plaintiff as discriminatory.

In cases like this, where the ads in question are part of a large advertising campaign, but are not facially discriminatory, courts have found it appropriate to look at the entire advertising campaign to help determine whether there is an FHA violation.  *See, e.g., Tyus v. Urban Search Management*, 102 F.3d 256, 264-65 (7th Cir. 1996) (noting that an advertisement featuring only white models is not facially discriminatory, but if the ad is run often enough, a pattern may emerge that would give rise to liability under the FHA); *Ragin*, 923 F.2d at 1002 (noting that in cases where advertisers use a large number of models and/or advertise repetitively, "the advertiser's opportunities to include all groups are greater, and the message conveyed by the exclusion of a racial group is stronger").

The Connor Group owns and manages roughly 1900 rental units in the greater Dayton area.  Answer at ¶ 4.  Over the course of a 10-month period, it posted thousands of advertisements for these properties on Craigslist.  McCarthy Dep. at 236-37.  During the same time period the allegedly discriminatory ads were posted, Defendant also posted several ads tending to show that these apartment complexes are, in fact, family-friendly.  It often used the heading "Got Kids?" and included information about nearby schools and amenities that would be of interest to families.  Exs. 36-39, 41-46 to Schulz Aff.

Plaintiff maintains that these family-friendly ads do not necessarily "cancel out" the others, and do not alter the fact that Defendant's advertising campaign would, as a whole, discourage ordinary persons with children from pursuing rental opportunities.[13]  In the Court's view, for the reasons expressed above, this is a question to be resolved by the jury.  Genuine issues of material fact preclude summary judgment on Plaintiff's claim that Defendant's advertisements, as a whole, discourage families with children from pursuing rental opportunities at Stonebridge Apartment Homes and Chesapeake Landing Apartments.

---

[13]  Likewise, Plaintiff argues that Defendant's ad for a "bachelor pad" is not "cancelled out" by placing an ad reading, "It's That Time of the Month Again . . . Feeling a Different Kind of Cramp Though?"

**IV.    Conclusion**

For the reasons set forth above, the Court OVERRULES Plaintiff's Motion for

Partial Summary Judgment Against Defendant The Connor Group as to Liability.

Doc. #12.


Date: July 27, 2011

WALTER HERBERT RICE
UNITED STATES DISTRICT JUDGE


Copies to: Counsel of Record