IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MIAMI VALLEY FAIR HOUSING         :
CENTER, INC.
                                  :    Case No. 3:10-cv-83
           Plaintiff,
                                  :
     vs.
                                  :    JUDGE WALTER HERBERT RICE
THE CONNOR GROUP, et al.,
                                  :
           Defendants

---

DECISION AND ENTRY OVERRULING PLAINTIFF'S "RENEWED
MOTION UNDER RULE 50 AND/OR FOR JUDGMENT
NOTWITHSTANDING THE VERDICT OR A NEW TRIAL PURSUANT TO
RULE 59" (DOC. #93); OVERRULING DEFENDANT'S "MOTION FOR
ATTORNEYS' FEES" (DOC. #98)

---

     This matter is currently before the Court on Plaintiff's "Renewed Motion

Under Rule 50 and/or for Judgment Notwithstanding the Verdict or a New Trial

Pursuant to Rule 59."  Doc. #93.  Also pending is Defendant's "Motion for

Attorneys' Fees."  Doc. #98.  For the reasons set forth below, the Court overrules

both motions.

I.     Background and Procedural History

     Plaintiff, Miami Valley Fair Housing Center, Inc., filed suit against The

Connor Group and two of its employees.[1]  The suit arose out of several
advertisements that The Connor Group posted on Craigslist, listing apartments for
rent.  Plaintiff alleged that these advertisements indicated a preference or limitation
based on sex or familial status, thereby violating federal and state fair housing
laws.  *See* 42 U.S.C. § 3604(c); Ohio Rev. Code §4112.02(H)(7).

The Court overruled Plaintiff's motion for summary judgment on the issue of
liability, finding that the ads in question were not facially discriminatory, and that
genuine issues of material fact precluded summary judgment on the question of
whether an "ordinary reader" would find that the ads indicated an unlawful
preference or limitation based on sex or familial status.  Doc. #78.

Just before trial, Plaintiff decided to dismiss all claims except those based on
an advertisement which stated, "[o]ur one bedroom apartments are a great
bachelor pad for any single man looking to hook up."  The case was tried to a jury
from August 2-5, 2011.  Plaintiff argued that this advertisement indicated an illegal
preference or specification based on sex and familial status.

At the close of Plaintiff's case-in-chief, Plaintiff moved for judgment as a
matter of law pursuant to Federal Rule of Civil Procedure 50(a).  Defendant moved
for the same.  The Court denied both motions without prejudice to renewal.  At the
close of the trial, both parties renewed their motions for judgment as a matter of

_____

[1]  The parties later stipulated to the dismissal of all claims against the
individual employees, leaving The Connor Group as the sole defendant.  Doc. #24.

2

law and, again, the Court denied those motions.

After less than two hours of deliberation, the jury returned a verdict in favor of Defendant on all claims. On August 18, 2011, Plaintiff filed a "Renewed Motion Under Rule 50 and/or for Judgment Notwithstanding the Verdict or a New Trial Pursuant to Rule 59." Doc. #93. Defendant filed its "Motion for Attorneys' Fees," on September 15, 2011, along with its Bill of Costs. Docs. ##97-98. Those motions are now fully briefed.

## II. Plaintiff's Renewed Motion Under Rule 50 and/or for Judgment Notwithstanding the Verdict or a New Trial Pursuant to Rule 59

### A. Relevant Law

Federal Rule of Civil Procedure 50, governing motions for judgment as a matter of law in a jury trial, provides, in relevant part, as follows:

**(a) Judgment as a Matter of Law.**

> **(1) In General.** If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> > (A) resolve the issue against the party; and
> > (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
>
> **(2) Motion.** A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

3

**(b) Renewing the Motion After Trial; Alternative Motion for a New Trial.** If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:

> (1) allow judgment on the verdict, if the jury returned a verdict;
> (2) order a new trial; or
> (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(a) and (b).

Federal Rule of Civil Procedure 59(a)(1)(A), in turn, provides that, following a jury trial, "[t]he court may, on motion, grant a new trial on all or some of the issues--and to any party. . . for any reason for which a new trial has heretofore been granted in an action at law in federal court."

## B. Renewed Motion for Judgment as a Matter of Law

The Court agrees with Defendant that Plaintiff's initial motion for judgment as a matter of law, made immediately after Plaintiff's case-in-chief, was premature since Defendant had not yet been "fully heard." *See* Fed. R. Civ. P. 50(a)(1). Nevertheless, this technical error is largely irrelevant since Plaintiff renewed its motion after Defendant presented its case.

Plaintiff continues to argue that the "bachelor pad" advertisement facially and unambiguously indicates an illegal preference or specification for a "single man," thereby discriminating on the basis of sex and familial status. Plaintiff

4

maintains that a reasonable jury could reach but one conclusion  -- that an ordinary reader of the protected class, *i.e.*, a woman or a person with children under the age of 18, would be discouraged from answering this advertisement.

Defendant again denies that the advertisement is facially discriminatory and denies that the use of the term "bachelor pad" is a *per se* violation of the fair housing laws.  Although the ad in question is designed to appeal to single men, it contains no express preference or limitation, and an ordinary reader would not necessarily conclude that women or people with children were not welcome at this apartment complex.  Defendant further notes that ordinary readers – in this case, the jury -- in fact, found that the advertisement did not discriminate on the basis of sex or familial status.

In its reply brief, Plaintiff cites to several cases in which courts have found certain advertisements or statements to be facially discriminatory.  *See, e.g.*, *Fair Hous. Congress v. Weber*, 993 F. Supp. 1286, 1291-92 (C.D. Cal. 1997) (rule that children "will not be allowed to play or run around inside the building area at any time" indicated a facially discriminatory preference); *Pack v. Fort Washington II*, 689 F. Supp.2d 1237, 1244 (E.D. Cal. 2009) (rule requiring all children to be supervised by an adult when outside was facially discriminatory);  *Blomgren v. Ogle*, 850 F. Supp. 1427, 1440 (E.D. Wash. 1993) ("no children . . . allowed in the apartments" implies an obvious discriminatory preference); *Hunter v. Williamson*, No. 07-7970, 2008 U.S. Dist. LEXIS 48522 (E.D. La. June 25, 2008)

5

(advertisement restricting number of children permitted to live in apartment indicated illegal preference based on familial status); *HUD v. Parker*, HUDALJ 10-E-170-FH/19 (Dec. 17, 2010) (landlord's asking why Hispanic applicant would want to live in black neighborhood indicated an illegal preference).

These cases are easily distinguishable. The first four involved express rules or limitations that left no doubt that children were not particularly welcome at these apartment complexes. Likewise, in the final case, the landlord's question clearly indicated that he or she would prefer not to have a Hispanic tenant. In contrast, Defendant's advertisement simply says that its one bedroom apartments "are a great bachelor pad for any single man looking to hook up." The focus of the advertisement "is the suitability of the property to the renter -- not the acceptability of the renter to the owner." *Metropolitan Milwaukee Fair Hous. Council v. Labor & Indus. Comm'n*, 496 N.W.2d 159, 162 (Ct. App. Wis. 1992).

As the Court previously held, in denying Plaintiff's motion for summary judgment, nothing in the "bachelor pad" advertisement *requires* the conclusion that Defendant prefers to rent to men or to people without children, and nothing *requires* the conclusion that women and families would not be equally welcome. Doc. #78, at 20-23. Although women and individuals with children may be somewhat dissuaded from responding to an ad for a "great bachelor pad," that dissuasion is not "the product of any discriminatory statement or indication in the advertisement." *Metropolitan Milwaukee Fair Hous. Council*, 496 N.W.2d at 162.

6

For the reasons set forth by the Court in its previous Decision and Entry, the Court adheres to its view that the "bachelor pad" advertisement is not facially discriminatory. Plaintiff's renewed motion for judgment as a matter of law is therefore OVERRULED.

> ### C.    Motion for a New Trial

In the alternative, Plaintiff argues that it is entitled to a new trial because the jury instructions given by the Court were erroneous and tainted the deliberation process. Plaintiff contended that the "bachelor pad" advertisement indicated an illegal "preference" or "specification" based on sex and familial status. Plaintiff asked the Court to instruct the jury that an advertisement indicates an illegal "preference" if it "would discourage an ordinary reader of a protected class from answering it." This language came from *Ragin v. New York Times Co.*, 923 F.2d 993, 999-1000 (2d Cir. 1991).

In *Ragin*, the plaintiff alleged that apartment ads featuring all white models "indicated" a "preference" based on race, in violation of the Fair Housing Act ("FHA"). That statute makes it unlawful to publish an "advertisement, with respect to the sale or rental of a dwelling, that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin. . . " 42 U.S.C. § 3604(c).

In construing the relevant statutory language, the Second Circuit wrote:

[T]he first critical word is the verb "indicates." Giving that word its common meaning, we read the statute to be violated if an ad for

7

housing suggests to an ordinary reader that a particular race is preferred or dispreferred for the housing in question. . .

The second critical word is the noun "preference." The Times asks us to read that word to preclude liability for a publisher where the ad in question is not facially discriminatory and the publisher has no other evidence of a discriminatory intent. We share that general view but with important qualifications. . .

Ordinary readers may reasonably infer a racial message from advertisements that are more subtle than the hypothetical swastika or burning cross, and *we read the word "preference" to describe any ad that would discourage an ordinary reader of a particular race from answering it.*

*Ragin*, 923 F.2d at 999 -1000 (emphasis added).

In crafting the jury instructions in the instant case, the Court incorporated Plaintiff's request as follows:

In deciding whether Defendant's advertisement indicates a preference, limitation, specification, or discrimination based on sex or familial status, you must determine how an "ordinary reader" would interpret the advertisement. The "ordinary reader" is one that is neither the most suspicious nor the most insensitive person in our society.

The relevant question is whether the advertisement would suggest to an "ordinary reader" that a person of a particular sex or with a particular familial status is preferred or disfavored for the housing in question.  Keep in mind that most advertisements will tempt some and discourage others.  The question is not whether the particular advertisement discourages some potential renters from applying. The appropriate question is whether such discouragement is the product of any discriminatory statement or indication in the advertisement.

If an ordinary reader who is a member of a protected class would be discouraged from answering the advertisement because of some discriminatory statement or indication contained therein, then the fair housing laws have been violated.

8

> Focus on the message being conveyed by the advertisement at issue in this matter. Ask yourselves whether the message focuses on the suitability of the property to the renter, which is permissible, or whether it impermissibly focuses on the suitability of the renter to the owner.

Doc. #89, at 23-24.

Plaintiff maintains that this instruction improperly required the jury to find that the advertisement contained a "discriminatory statement or indication." According to Plaintiff, these instructions sent a conflicting message to the jury. The Court instructed the jury that Plaintiff need not prove intent to discriminate, Doc. #89, at 22, but then also instructed the jury that Defendant would be liable if an ordinary reader would be discouraged from answering the advertisement "because of some discriminatory statement or indication contained therein." Doc. #89, at 23.

Plaintiff further objects because some of the language in this jury instruction was adapted from *Metropolitan Milwaukee Fair Hous. Council*, 496 N.W.2d 159, a Wisconsin case. In that case, the court held that an ad stating that a rental property was "ideal for couple" would not suggest to an ordinary reader that married people were preferred over single people. Plaintiff correctly notes that the Wisconsin state statute at issue in that case was worded more narrowly than the FHA or Ohio's fair housing statute. The Wisconsin statute prohibited ads that indicated any "discrimination in connection with housing," but said nothing about those indicating an illegal preference, limitation, or specification. Wisconsin Open

9

Housing Act, § 101.22, Stats. Plaintiff maintains that it was prejudiced by the Court's jury instructions, which focused too heavily on discrimination as a means of establishing liability.

Defendant argues that because the jury instructions, as a whole, correctly stated the applicable law, Plaintiff's motion for a new trial must be overruled. The Court agrees. As Defendant notes, the Court instructed the jury on three separate occasions that it was unlawful to publish an advertisement that indicates "a preference, limitation, specification, or discrimination based upon sex or familial status," Doc. #89, at 13, 20, 22, and instructed the jury that intent was not required, Doc. #89, at 22. Moreover, the Court did incorporate the requested language from *Ragin*, concerning an ordinary reader being "discouraged" from applying. Doc. #89, at 23.

The "ordinary reader" standard is an objective one and, as noted in *Ragin*, "the touchstone is . . . the message." 923 F.2d at 995. It is not enough that a member of a protected class is discouraged from answering a housing advertisement. That person must be discouraged because there is something in that advertisement that "indicates," *i.e.*, "suggests to an ordinary reader," a preference, limitation, or discrimination based on an individual's status as a member of a protected class. *Ragin*, 923 F.2d at 999.

That "something" might be a blatantly discriminatory statement, such as "whites only" or it may be a much more subtle message, as it was in *Ragin*, where

10

an advertising campaign spanning 20 years used only white models. Intent to discriminate is not required. However, there must be something from which it can reasonably be inferred that persons of a particular class are "preferred or dispreferred for the housing in question." *Id.* Because the jury instructions correctly stated the law, Plaintiff's motion for a new trial is OVERRULED.[2]

### III. Defendant's Motion for Attorneys' Fees

As the prevailing party in this case, Defendant has moved for an award of attorneys' fees and costs. Doc. #98. The Fair Housing Act ("FHA") provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c)(2).

### A. Attorney Fees

The statute, on its face, makes no distinction between fees and costs available to prevailing plaintiffs and those available to prevailing defendants. For policy reasons, courts have nevertheless imposed different standards. Absent special circumstances, prevailing plaintiffs in civil rights cases are routinely

---

[2] Plaintiff also argues that a new trial is warranted because Defendant, in closing arguments, analogized the "bachelor pad" advertisement to advertisements for "Ladies Night" at bars, arguing that for the same reasons that men frequent bars on "Ladies Night," women would rent apartments in a complex advertising "bachelor pads." Plaintiff notes that courts have found "Ladies' Night" discounts to be discriminatory. *See, e.g.*, *Koire v. Metro Car Wash*, 40 Cal.3d 24 (Cal. 1985). Defendant notes, however, that Plaintiff made no objection during closing arguments, and that the Court instructed the jury that closing arguments are not evidence. Under these circumstances, Defendant's closing argument provides no basis for granting a new trial.

11

awarded attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

However, in order to "avoid chilling the initiation and prosecution of meritorious civil rights actions," prevailing defendants are subject to a much higher standard. *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 765, 770 (2d Cir. 1998). In *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 422 (1978), a Title VII employment discrimination case, the Supreme Court held that attorney fees may be awarded to a prevailing defendant only if the plaintiff's claim "was frivolous, unreasonable, or without foundation." This same standard has been extended to FHA claims. *Brooks v. Center Park Assocs.*, 33 F.3d 585, 587 n.2 (6th Cir. 1994). One circuit court has noted that "it is very rare that victorious defendants in civil rights cases will recover attorneys' fees." *Sista v. CDC Ixix North Am., Inc.*, 445 F.3d 161, 178 (2d Cir. 2006).

Defendant argues that attorneys' fees and costs are warranted in this case because Plaintiff lacked evidence to support its claims of discriminatory advertising, presenting nothing but the advertisements themselves. According to Defendant, Plaintiff's claim that the "bachelor pad" advertisement indicated a preference for people without children was contradicted by Plaintiff's own witness, Anita Schmaltz, who testified that her investigation indicated that Defendant had engaged in steering people with children to the apartment complex at issue.

Defendant also maintains that Plaintiff's claims were frivolous given the inconsistent and contradictory allegations. Evidence showed that, during the same

12

time period the "bachelor pad" ad was posted, Defendant posted some ads designed to attract families with children and other ads targeted at women. According to Defendant, the frivolous nature of Plaintiff's claims is further highlighted by the fact that Plaintiff dropped all claims related to ten of the eleven advertisements just prior to trial, and by the fact that the jury deliberated for less than two hours before returning a verdict in Defendant's favor.

Finally, Defendant argues that a footnote citation included in the Court's decision overruling Plaintiff's motion for summary judgment should have prompted Plaintiff to dismiss its claims. The Court noted that in a concurring opinion in the *Metropolitan Milwaukee Fair Housing Council* case involving an advertisement for an apartment that was "ideal for couple," the judge had chastised that plaintiff for bringing a suit that "trivialize[d] genuine efforts to end discrimination." Doc. #78, at 22-23 n.10 (citing *Metropolitan Milwaukee Fair Housing Council*, 496 N.W.2d at 163).

In the Court's view, Defendant has failed to establish that Plaintiff's claims were frivolous, unreasonable, or without foundation. As Plaintiff notes, the Ohio Civil Rights Commission had previously issued a finding that it was "probable" that the "bachelor pad" advertisement violated the fair housing statutes. Although this determination is certainly not binding, it does lend credence to Plaintiff's claim.

Plaintiff further notes that Defendant made no effort to file any dispositive motions in this case; it argues that Defendant thereby impliedly conceded that

13

Plaintiff's claims had at least some merit. In addition, Plaintiff notes that, during trial, the Court overruled both of Defendant's motions for judgment as a matter of law, concluding that a reasonable jury could find in Plaintiff's favor. A finding that Plaintiff's claims were frivolous, unreasonable, or without foundation would fly in the face of those rulings.

The Court rejects Defendant's argument that, in dropping the majority of its claims just prior to trial, Plaintiff impliedly conceded that the claims were frivolous. As Plaintiff explains, it chose to narrow the scope of the case at that point in order to simplify it for trial. The Court also rejects Defendant's argument that Plaintiff's claims must be deemed frivolous because Plaintiff presented no evidence other than the advertisement itself. No other evidence is necessarily needed for the jury to determine that an ordinary reader would find that the ad indicated a preference or specification based on sex or familial status.

Admittedly, there was some evidence that was seemingly inconsistent with Plaintiff's claim that Defendant preferred to rent to single men. Defendant did, in fact, post other ads that were targeted to women and to people with children. This inconsistent evidence may have weakened Plaintiff's case, but it does not render Plaintiff's claims frivolous. From a legal standpoint, the relevant question is whether the one advertisement for a "bachelor pad" indicated an illegal preference based on sex or familial status.

14

Because Defendant has failed to prove that Plaintiff's claims were frivolous, unreasonable, or without foundation, the Court OVERRULES Defendant's Motion for Attorneys' Fees under 42 U.S.C. § 3613(c).

### B.    Costs

In its Motion for Attorneys' Fees, Defendant also seeks $13,851.10 in non-statutory costs pursuant to 42 U.S.C. § 3613(c)(2).  In *Northcross v. Board of Education of Memphis City Schools*, 611 F.2d 624, 639 (6th Cir. 1979), *overruled on other grounds*, the court noted that some out-of-pocket expenses "normally charged to a fee-paying client" are recoverable under the fee-shifting civil rights statutes.  In this case, Defendant seeks to recover its out-of-pocket expenses for photocopies, postage, LEXIS research, litigation supplies, a jury consultant, and other incidental items.

An award of costs under § 3613(c)(2) is subject to the same standard as an award of attorneys' fees under that statute.  Since Defendant has failed to establish that Plaintiff's claims were frivolous, unreasonable, or without foundation, the Court also OVERRULES Defendant's request for $13,851.10 in non-statutory costs.

The Court notes, however, that this decision has no impact on Defendant's outstanding request for an additional $9,960.18 in costs as previously submitted in the Bill of Costs.  Doc. #97.  That separate request was made in accordance with

15

Federal Rule of Civil Procedure 54(d)(1)[3] and 28 U.S.C. § 1920.[4]  Pursuant to S.D.

Ohio Civ. R. 54.1(b), costs available to the prevailing party under § 1920 are to be

taxed by the Clerk of Court after all parties have had an opportunity to be heard.

The Court makes no ruling on Defendant's Bill of Costs at this time.  In accordance

with the local rules, the Court leaves resolution of that matter to the Clerk of

Courts, who may determine that additional briefing is necessary.[5]

---

[3]  Federal Rule of Civil Procedure 54(d)(1) states, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs -- other than attorney's fees -- should be allowed to the prevailing party."

[4]  Section 1920 provides as follows:

A judge or clerk of any court of the United States may tax as costs the following:
(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920.

[5]  The Court notes that Plaintiff has already lodged objections to expenses related to some of the deposition transcripts.  *See* Doc. #99, at 12-14.

The Court rejects Plaintiff's claim that the Court's finding that Plaintiff's claims were not frivolous precludes Defendant from recovering costs under § 1920. In support of its argument, Plaintiff cites to *Cleveland v. Ibrahim*, 121 F. App'x 88 (6th Cir. 2005). In *Ibrahim*, even though the plaintiff was the prevailing party in a fair housing case, the district court declined to award her attorney's fees and costs pursuant to 42 U.S.C. § 3613 (c)(2), because the case was "close and difficult." *Id.* at 89. The Sixth Circuit reversed, noting that, absent "special circumstances," prevailing plaintiffs were entitled to attorney's fees and costs. The court held that the "closeness" of a case was not a "special circumstance" that could defeat an award of attorney's fees under § 3613(c)(2). The court further held that "[t]he same analysis holds for costs, because the fee-shifting provision of § 3613(c)(2) provides for an award of 'attorney's fee and costs.'" *Id.* at 91.

Plaintiff tries to extend the holding in *Ibrahim* to also mean that if a prevailing defendant is not entitled to attorney's fees under § 3613(c)(2), the defendant is not entitled to statutory costs under § 1920 either. The Court does not read *Ibrahim* so broadly. First, it is not clear from the opinion that the costs at issue in *Ibrahim* were statutory costs taxable under § 1920 rather than non-statutory costs that the court could award, in its discretion, under § 3613(c)(2). Read in context, it appears much more likely that the latter was at issue. Second, Plaintiff has pointed to no cases in which prevailing defendants who were denied

17

attorney's fees and costs under § 3613(c)(2) were also denied statutory costs under § 1920. In contrast, Defendant has cited to two cases in which prevailing defendants in fair housing cases were denied attorney's fees and costs under § 3613(c)(2) but were awarded statutory costs under § 1920. *See Taylor v. Harbour Pointe Homeowners Assoc.*, No. 09-cv-257, 2011 WL 1792766, at *3 (W.D.N.Y. May 6, 2011); *Kalai v. Hawaii*, No. 06-433, 2009 WL 2224428 (D. Hawaii July 23, 2009). For these reasons, the Court concludes that even though Defendant is not entitled to attorney's fees or costs under § 3613(c)(2), Defendant is not foreclosed from recovering statutory costs under § 1920.

## IV.    Conclusion

For the reasons stated above, the Court OVERRULES Plaintiff's "Renewed Motion Under Rule 50 and/or for Judgment Notwithstanding the Verdict or a New Trial Pursuant to Rule 59." Doc. #93. The Court also OVERRULES Defendant's "Motion for Attorneys' Fees." Doc. #98.

Defendant's Bill of Costs is entrusted to the Clerk of Courts who shall take whatever action it deems necessary to resolve it.

Date: February 13, 2012

WALTER HERBERT RICE
UNITED STATES DISTRICT JUDGE

18