IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MIAMI VALLEY FAIR HOUSING
CENTER, INC.,

        Plaintiff,

   v.

THE CONNOR GROUP, *et al.*,

        Defendants.

   :

   :     Case No. 3:10-cv-83

   :     JUDGE WALTER H. RICE

   :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART DEFENDANT'S MOTION IN LIMINE (DOC. #121) AND
PLAINTIFF'S MOTION IN LIMINE (DOC. #122)

---

This matter is currently before the Court on: (1) Defendant's Motion in

Limine (Doc. #121); and (2) Plaintiff's Motion in Limine (Doc. #122).  The Court

held oral argument on these motions and gave tentative rulings on most of the

issues during a conference call held on May 6, 2014.  This Decision and Entry

briefly summarizes and finalizes those rulings, as well as rules on those matters

taken under advisement on May 6th.

I.     **Defendant's Motion in Limine (Doc. #121)**

    A.    **Evidence and Argument Relating to Whether the Advertisement
        "Discourages" a Particular Protected Class**

The Sixth Circuit held that the ordinary-reader standard does not require an

ad to "discourage" an ordinary reader of a particular protected class. *Miami Valley*

*Fair Housing Center v. The Connor Group*, 725 F.3d 571, 577 (6th Cir. 2013).

The court specifically rejected holdings from other circuits indicating that the Fair Housing Act's use of the word "preference" described any ad that would "discourage" an ordinary reader of a particular protected class from answering it. The Sixth Circuit refused to incorporate the "discourage" language into the "ordinary reader" analysis, choosing to consider "only whether an ordinary reader would find that the advertisement indicates a preference." *Id.* at 577-78.

Defendant therefore seeks to exclude all evidence and argument concerning whether the ad "discourages" a particular protected class from responding. Plaintiff's counsel has taken the word "discouraged" out of the proposed jury instructions, but seeks to use it during trial. At oral argument, Plaintiff's counsel indicated that she understood that this was not the relevant standard and would not focus on it. She agreed to substantially restrict her use of the word.

The Court will not completely bar Plaintiff's counsel from making limited use of the word "discourage" at trial. The Court is concerned, however, that if Plaintiff's counsel uses the word too often, there is a substantial risk that the jury will be misled into believing that this is the relevant standard, despite jury instructions to the contrary. Therefore, Plaintiff's counsel shall restrict the use of the word "discourage" as promised, and shall not use the word in opening statements or closing arguments. The Court will add a jury instruction making it clear that the question is not whether someone from a protected class was discouraged from answering the ad, but whether an ordinary reader would find that the ad indicates a preference.

2

**B.     Evidence and Argument Relating to Whether the Ad Would Violate the FHA or Ohio Law if it Referenced a Protected Class Other than Sex or Familial Status**

Plaintiff wants to be able to again elicit testimony that one way MVFHC employees determine whether an ad violates the law is to swap out one protected class for another.  For example, one might swap out the statement "great for any single man" with "great for any white person."  Defendant argues that this hypothetical ad referencing race will confuse and inflame the jury, and should be excluded as irrelevant and unfairly prejudicial.

The Court overrules Defendant's motion on this subject.  As Plaintiff points out, the jury is less likely to be familiar with discrimination based on sex or familial status.  The proposed analogy may help the jury to understand the relevant issue.  Although it may be prejudicial, it is not *unfairly* prejudicial.  The fair housing laws deem all protected classes equally worthy of protection.  Defendant may object when the testimony is given, and the Court will allow Defendant to make a record on the objection and, further, allow a continuing objection on this issue.  The Court will also consider giving a limiting instruction.

**C.     Prior Testimony of Jim McCarthy Concerning his Prior Failure to Differentiate Between a "Bachelor Pad" and a "Bachelor Apartment"**

At the first trial, Plaintiff objected when Defendant tried to use McCarthy's deposition to impeach him on this topic.  The Court reserved ruling and Defendant chose not to continue to pursue this line of questioning.  The concern was that McCarthy's statements were made in the context of his response to an Ohio Civil

3

Rights Commission ("OCRC") inquiry, and the Court had ruled that the results of the OCRC investigation were inadmissible.  Tr. at 207-09.

Defendant again seeks to pursue this line of questioning, and suggests that the evidentiary problem can be avoided if Defendant simply stipulates that the letter referred to in McCarthy's deposition is an argument submitted by McCarthy to an administrative agency.  This way, neither McCarthy's letter nor the OCRC's probable cause finding needs to be disclosed to the jury.

The Court finds that this is an acceptable solution.  Defendant will be permitted to impeach McCarthy on this topic, and Plaintiff can re-direct.  The Court may provide a limiting instruction indicating that any proceedings before an administrative agency are not relevant to the jury's determination.

## II.     Plaintiff's Motion in Limine (Doc. #122)

### A.     References to Prior Jury Verdict

Plaintiff seeks to exclude references to the prior jury verdict.  Since Defendant does not intend to introduce any evidence of the prior jury verdict, this is moot.

On a related note, the parties agree that any references to prior trial testimony are best handled by referring to it as testimony given "while you were under oath on a prior occasion."

### B.     Standing

Plaintiff seeks to exclude any evidence suggesting that Plaintiff lacks standing to bring these claims.  Again, this issue is moot.  The Sixth Circuit has

determined that Plaintiff has standing, and Defendant does not intend to argue otherwise.

### C.     Fair Housing Testing

Plaintiff seeks to exclude testimony about its testing of Connor Group properties for disability discrimination and race discrimination.  This issue is also moot since Defendant plans to adhere to the Court's previous ruling excluding such evidence as irrelevant.

### D.     Intent Evidence and Opinion Evidence

Plaintiff seeks to exclude evidence of intent, Internet opinion evidence, and media coverage.  Again, Defendant intends to adhere to the Court's previous rulings excluding as irrelevant and prejudicial: (1) all evidence of what the people posting ads for Connor Group intended; (2) evidence of whether Defendant's or Plaintiff's employees thought the ads violated the law;[1] (3) Internet opinion evidence; and (4) evidence of media coverage of this case.

The parties have stipulated that Craigslist searched for, but was unable to locate, any complaints about the ad in question, other than the one submitted by Plaintiff.  This evidence is relevant to the question of how an ordinary reader viewed the ad.  The stipulation is therefore again admissible.

_____

[1] To the extent that, by way of background, Plaintiff's employees testify that they filed a complaint because they believed that the ad violated the fair housing laws, the Court will give a limiting instruction so that the jury understands that because the employees are not "ordinary readers," their opinions are irrelevant to the ultimate issue in this case.

### E.    Innuendo and Character Assassination aimed at MVFHC

During closing argument at the first trial, Defendant's counsel referred to MVFHC being a "litigation mill" and an organization that trolls the Internet looking for violations so it can file suit.  Plaintiff objected, and the Court ordered the jury to disregard. Tr. at 464-65.

The parties agree that counsel may question MVFHC employees about reviewing Craigslist ads for advertising that may violate the fair housing laws. Plaintiff, however, again seeks to exclude similar negative characterizations during closing argument.  Defendant argues that these characterizations go to motive and bias, and should be allowed.  In the Court's view, Defendant can make the same point without using derogatory terms such as "litigation mill" and "trolling the internet."  Defendant shall refrain from using such terms during closing argument.

Defendant intends to abide by the Court's previous exclusion of evidence of the "Where There's a Witch, There's a Way" plaque, the "dammit doll," raffles, and photos of cars of MVFHC employees.  Plaintiff's objection to the introduction of this evidence is therefore moot.

Plaintiff also seeks to exclude evidence that one of its board members is employed by Simms Management, a direct competitor of The Connor Group.  The Court previously ruled that this evidence is relevant to the issue of bias and motivation for filing suit.  The Court stands by its previous ruling.

The Court previously reserved ruling on the admissibility of Tom Toberen's conviction for child pornography, and asked the parties to approach the bench prior

6

to examining him on this point.  It appears that, as of now, neither party intends to call this witness.  If Toberen is called as a witness, the Court intends to proceed as previously discussed.

### F.    Improper References to HUD Grants, Settlements, Attorney Fees

With respect to the question of compensatory damages, Plaintiff seeks to exclude all improper references to HUD grants, settlement proceeds, and Plaintiff's tax returns.  The Court previously excluded such evidence, finding it too confusing for the jury.  Plaintiff also seeks to again exclude evidence of settlement discussions, and of Plaintiff's failure to try to resolve the matter informally before filing an OCRC complaint.  Because Defendant intends to adhere to the Court's prior rulings, Plaintiff's concerns are moot.

### G.    References to "Ladies Night"

In closing arguments at the first trial, Defendant argued that the "single man" ad might actually attract women rather than discourage them, for the same reason men go to bars on "ladies night."  Tr. at 456.  Plaintiff argues that this is analogy is misleading and prejudicial.

Defendant argues that an "ordinary reader's" perception of the ad is influenced by past experience with advertising, including familiarity with "Ladies Night" ads.  It insists that it does not seek to use the analogy to convince the jury

that because the "Ladies Night" ad is legally permissible, the "Single Man" ad is also.[2]

Nevertheless, the Court finds that any probative value that this analogy may have is substantially outweighed by the risk of confusing the jury about the applicable law. Fed. R. Evid. 403. Even though Defendant acknowledged during closing arguments that fair housing laws are distinguishable from laws relating to other advertisements, the jury may fail to make the necessary distinction. Therefore, Defendant shall not use the "Ladies Night" analogy at trial.[3]

### H.    Marketing for Products Not Subject to Anti-Discrimination Law

In a similar vein, Plaintiff seeks to exclude references to advertising for consumer products, such as cars, targeted to one particular demographic group. Again, Defendant argues that these ads are helpful to an understanding of how an "ordinary reader" would respond to a particular advertisement. And again, Defendant insists that it is not presenting the ads to convince the jury that because certain consumer ads that target particular demographic groups are legal, the "Single Man" ad is also. But, as counsel for Plaintiff pointed out, that is the implication.

---

[2] Plaintiff notes that some state courts have held that "ladies night" violates public accommodation laws.

[3]  At oral argument, counsel for Defendant argued that if Plaintiff is permitted to analogize by swapping one protected class for another, Defendant should also be permitted to use the "Ladies Night" analogy. The Court disagrees. In Plaintiff's analogy, because the same law applies to all protected classes, it is permissible to swap one protected class for another to make a point. In Defendant's analogy, fair housing discrimination laws are inapplicable to other kinds of advertising, and there is a greater danger that the jury will be confused as to the applicable law.

The Court finds that because these consumer ads are not subject to anti-discrimination laws, any probative value that the analogies might have is substantially outweighed by the danger, and the prejudice, of confusing the issues. Defendant shall, therefore, refrain from using such analogies.

I.      **Misleading Arguments about the Meaning of "Specification"**

Plaintiff asks the Court to exclude misleading arguments about the meaning of the word "specification," as used in Ohio Revised Code § 4112.02(H)(7).  Ohio law does not define "specification."

In closing arguments at the first trial, Defendant noted that Wikipedia defines the word as "an explicit set of requirements" and The Business Directory defines it as a "requirement."  Plaintiff, on the other hand, urged the jury to apply the "common meaning" of the word, and noted that dictionary.com defines it as the "act of mentioning or naming specifically or definitely."

On appeal, the Sixth Circuit stated:

Here, the Ohio statute's addition of the word "specification" arguably broadens the scope of the statute beyond that covered by the Fair Housing Act. However, we believe that under an ordinary-reader standard, as it is applied to a Fair–Housing–Act analysis, an ordinary reader could find multiple ways to interpret the advertisement as it related to the Ohio statute's non-specification requirement. *On the one hand, an ordinary reader could find the ad had a specification based upon familial status and sex when it "specified" a single man. Or, an ordinary reader could find that while the ad discusses a single man, it does not specify who can actually live in the apartment.*

*Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp.*, 725 F.3d at 579 (emphasis added).  Unfortunately, this language does not clearly support or foreclose either

9

the "technical meaning" of the word advanced by Defendant, or the "common meaning" advanced by Plaintiff.

Although the Court would like to be able to clearly define the word "specification" for the jury, there is very little guidance on this topic. Any attempt to do so, *by the Court or by the parties*, may prove to be more harmful than helpful. The Sixth Circuit appears to imply that it is up to the jury to decide whether an ordinary reader would interpret the advertisement as containing an illegal "specification," and to interpret this word as it sees fit.

Notably, at the first trial, the Court made no attempt to define the words "preference," "limitation," "discrimination," or "specification." Instead, it simply instructed the jury that these words "must be interpreted according to their common meanings, as viewed in the context of the relevant statutes."[4] This approach again seems advisable, particularly in light of the Sixth Circuit's opinion. Accordingly, the Court intends to give the same jury instruction it gave at the first trial. *Neither party* shall offer a proposed definition of the word "specification" during trial.

---

[4] Were the Court forced to choose, it tends to agree that Defendant's proposed definition of a "requirement" probably best expresses the legislature's intent, particularly when the word "specification" is read in context with the words "preference," "limitation," and "discrimination." The Court noted at the first trial that the word "specification" cannot mean something significantly different than these other three words. Tr. at 426.

J.    **Plaintiff's Entitlement to Attorney Fees**

Plaintiff seeks to exclude all evidence of Plaintiff's entitlement, as a prevailing party, to attorney fees.  Defendant intends to abide by the Court's previous ruling that evidence of entitlement to attorney fees is inadmissible during the liability phase, rendering this issue moot.

K.    **Forensic Searches of Defendant's Computer**

Plaintiff seeks to exclude evidence of forensic searches of Defendant's hard drive, conducted in an attempt to determine how many times the "single man" ad had run.  The Court previously sustained a similar objection because there were gaps in the data, making it impossible to determine whether the ad had been posted more than once.  Defendant intends to adhere to the prior ruling, rendering this request moot.

Plaintiff also seeks to exclude testimony "speculating" about whether the "single man" ad ran more than once.  Defendant notes that Rachel Underwood previously testified that, to the best of her knowledge, she never ran the ad a second time, and there is no evidence to the contrary.  The Court will permit Defendant to elicit the same testimony at the second trial.  Plaintiff is again free to cross-examine Underwood on this topic in an attempt to discredit her.

L.    **Evidence of Other Ads Posted by Connor Group**

Plaintiff seeks to exclude all evidence of other ads posted on Craigslist by The Connor Group, arguing that they are irrelevant to a determination of whether the "single man" ad is discriminatory.  Since Defendant has no intention of

11

introducing other ads, Plaintiff's request is moot. Defendant simply wants to again explain to the jury that this was just one ad of many posted on Craigslist. Defendant will be permitted to do so.

### M.    Evidence of Who Rented the Apartment in Question

Plaintiff seeks to exclude evidence of who rented the apartment that was advertised. This issue is moot, since Defendant intends to adhere to the Court's previous ruling that this is irrelevant and inadmissible.

### III.    Characterization of Advertisement

Defendant also asks the Court to bar Plaintiff from referring to the advertisement at issue as the "single man" ad instead of the "bachelor pad" ad. "Bachelor Pad" appears in the posting title on Craigslist. "Single Man" appears only in the body of the ad. According to Defendant, this characterization is argumentative and designed to taint the jury's mindset.

Notably, at the first trial, Plaintiff's counsel used "bachelor pad ad" and "single man ad" interchangeably without objection. Both terms are used in the ad itself, which must be considered in its totality. In the Court's view, Plaintiff's characterization is not argumentative, and there is no basis for excluding it. The Court therefore overrules Defendant's motion on this topic. Defendant may note its continuing objection at trial.

12

## IV.    Conclusion

For the reasons set forth above, Defendant's Motion in Limine (Doc. #121),

and Plaintiff's Motion in Limine (Doc. #122), are each SUSTAINED IN PART and

OVERRULED IN PART.


Date: May 7, 2014

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

13