IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MIAMI VALLEY FAIR HOUSING
CENTER, INC.,                                   :

          Plaintiff,                        Case No. 3:10-cv-83
                              :
       v.                                        JUDGE WALTER H. RICE

THE CONNOR GROUP,
          Defendant.                         :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART PLAINTIFF'S AMENDED MOTION FOR PARTIAL NEW TRIAL
PURSUANT TO RULE 59 (DOC. #166)

---

Plaintiff, Miami Valley Fair Housing Center, Inc. ("MVFHC"), filed suit

against Defendant, The Connor Group ("Connor Group"), alleging that a Connor

Group advertisement violated federal and state fair housing laws.  A jury agreed,

but found that MVFHC failed to prove that the violation was the proximate cause

of any harm to MVFHC.  Accordingly, a verdict was rendered in favor of Connor

Group.  This matter is currently before the Court on Plaintiff's Amended Motion for

Partial New Trial Pursuant to Rule 59.  Doc. #166.


I.     **Background and Procedural History**

In April of 2009, an employee of Connor Group, which owns and manages

the Chesapeake Landing apartment complex in Dayton, Ohio, posted an

advertisement on Craigslist. The ad stated that "our one bedroom apartments are a great bachelor pad for any single man looking to hook up." Doc. #1-1, PageID#7. Plaintiff MVFHC, a private non-profit corporation that works to eliminate discrimination in housing, filed a complaint with the Ohio Civil Rights Commission ("OCRC"), and later filed suit against Connor Group and two of its employees.[1] MVFHC alleged that the advertisement expressed an illegal preference, limitation, specification, or discrimination based on familial status and sex, in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(c), and Ohio Revised Code § 4112.02(H)(7).

This case has already been tried twice. At the first trial, held in August of 2011, the jury found that the advertisement *did not* violate federal or state law; Judgment was entered in favor of Connor Group, and MVFHC appealed. The Sixth Circuit Court of Appeals affirmed this Court's denial of MVFHC's motion for a directed verdict and denial of Connor Group's motion for attorney's fees, but reversed the denial of MVFHC's motion for a new trial, finding the jury instructions to be erroneous. *Miami Valley Fair Hous. Ctr. v. The Connor Group*, 725 F.3d 571, 577 (6th Cir. 2013).

On remand, at the second trial, held in May of 2014, the jury found that the advertisement *did* violate federal and state law. However, it found that MVFHC had failed to prove that the violation was a direct and proximate cause of harm to

---

[1] The claims against those employees have since been dismissed.

MVFHC.  Accordingly, the jury did not reach the question of damages.  Judgment was again entered in favor of Connor Group.

MVFHC filed a Motion for Partial New Trial Pursuant to Rule 59, Doc. #154, arguing that the verdict was contrary to law and against the weight of the evidence presented at trial, resulting in a miscarriage of justice.  According to MVFHC, unrebutted trial testimony of three witnesses proved that the advertisement frustrated MVFHC's mission, and that MVFHC expended resources in response to it.  MVFHC asked that the jury's finding that the advertisement violated federal and state fair housing laws be allowed to stand, and that a new trial be limited to the issues of causation and damages.

Connor Group filed a Memorandum in Opposition, Doc. #157, arguing that the verdict was not against the weight of the evidence presented, and that the jury could have reasonably concluded that MVFHC did not prove that this one particular advertisement was the direct and proximate cause of the damages alleged.  In the alternative, Connor Group argued that it would be unjust and inappropriate for the Court to order only a *partial* new trial.

MVFHC raised new issues in its Reply brief, Doc. #158. Citing *Alexander v. Riga*, 208 F.3d 419 (3d Cir. 2000), MVFHC now argued that it was plain error for the Court to impose any proximate cause requirement.  It urged the Court to enter judgment in its favor on the question of liability, award attorney's fees, and order a new trial limited solely to the question of damages.

3

Not surprisingly, Connor Group filed a Motion to Strike the Reply, Doc. #159, citing the new arguments raised.  This prompted MVFHC to file a Motion for Leave to Amend its Motion for Partial New Trial, Doc. #160.  Over Connor Group's protests, Doc. #161, the Court granted MVFHC leave to file an amended motion so that all relevant issues were properly before the Court, and so that Connor Group had ample opportunity to respond to them.  Doc. #165.

On October 24, 2014, MVFHC filed its Amended Motion for Partial New Trial Pursuant to Rule 59.  Doc. #166.  That motion is now fully briefed and ripe for decision.

## II.    Analysis

Federal Rule of Civil Procedure 59(a)(1) allows the Court to grant a new trial "on all or some of the issues."  Before turning to the question of whether a new trial is warranted, in whole or in part, the Court must resolve MVFHC's claim of plain error with respect to the issue of proximate cause.

### A.    MVFHC Must Establish Proximate Cause

Generally, a failure to object to a jury instruction at trial constitutes a waiver.  However, a jury instruction is still reviewable for "plain error" if the error "affects substantial rights."  Fed. R. Civ. P. 51(d)(2).  Under this standard, the error must be "obvious and prejudicial."  *Sovereign Order of Saint John of Jerusalem, Inc. v. Grady*, 119 F.3d 1236, 1243 (6th Cir. 1997).

4

Although MVFHC failed to object at trial, it now maintains that the Court committed plain error in instructing the jury that MVFHC could not recover damages absent proof that Connor Group's "single man" ad was the proximate cause of the alleged injury to MVFHC.  According to MVFHC, once the jury found that the advertisement violated federal or state fair housing laws, MVFHC was entitled to at least nominal damages, plus attorneys' fees and costs.

MVFHC relies on *Alexander v. Riga*, 208 F.3d 419 (3d Cir. 2000).  In that case, an African-American couple, Ronald and Faye Alexander, together with the Fair Housing Partnership of Greater Pittsburgh, Inc. ("FHP"), brought suit against landlords Joseph and Maria Riga, alleging fair housing violations.  The jury found that Maria Riga discriminated on the basis of race when she falsely told the Alexanders that an apartment was unavailable.  Nevertheless, because the jury found that Riga's conduct was not "a legal cause of harm" to the Alexanders, judgment was entered in favor of the Rigas and against the Alexanders.  *Id.* at 423-24.

In contrast, the jury concluded that Riga's conduct *was* "a legal cause of harm" to FHP.  Accordingly, the court entered judgment in favor of FHP.  Nevertheless, the jury awarded no compensatory damages to FHP.  The district court refused to submit the question of punitive damages to the jury.  *Id.*

On appeal, the Third Circuit held that "in a case alleging discrimination under the Fair Housing Act the discrimination itself is the harm."  It therefore reversed "the decision of the District Court granting judgment to the Rigas as against the

5

Alexanders and the decision declining to submit the question of punitive damages to the jury." *Id.* at 424.  The court explained:

> The plain language of the Fair Housing Act thus permits an individual to obtain relief for the discriminatory housing practice or breach. A prospective tenant must prove only that a landlord did one of the unlawful acts listed in section 3604 with respect to the prospective tenant's attempt to obtain housing. If an individual proves discrimination, he or she need not prove anything else. The District Court imposed upon the statute another requirement, "legal causation." The Rigas argue that the discrimination is the "legal cause" for the "harm," which itself must be proved. To the contrary, the "harm" is the discrimination.

*Id.* at 427.  The court found that the district court committed plain error "by requiring 'legal causation' beyond a showing of discrimination." *Id.* at 428.  It concluded that, once a violation of the fair housing law was found, the district court was required to enter judgment in favor of the Alexanders and the FHP. Because they were prevailing parties, they were also entitled to attorneys' fees and costs. *Id.* at 429-30.

In the Court's view, *Alexander* does not stand for the proposition that a fair housing organization need not prove that the discrimination at issue was the proximate cause of the harm allegedly suffered by that organization.  Here's why. In contrast to this case, the jury in *Alexander* found that the defendants' conduct *was, in fact*, the cause of the legal harm allegedly suffered by FHP.  Liability was therefore established, and judgment was entered in favor of FHP on this basis, even though the jury awarded no damages to FHP.

6

The Third Circuit had no occasion to decide whether FHP had to establish proximate cause for the harm allegedly suffered.  Rather, the court's holding was simply that the *Alexanders* did not have to establish proximate cause for the harm *they* allegedly suffered.  *See id.* at 427 ("A *prospective tenant* must prove only that a landlord did one of the unlawful acts listed in section 3604 *with respect to the prospective tenant's attempt to obtain housing*. If an *individual* proves discrimination, he or she need not prove anything else.") (emphasis added).

MVFHC cites to no cases holding that a fair housing organization need not establish proximate cause for damages it allegedly suffered.  The other case cited by MVFHC, *Woods v. Beavers*, 922 F.2d 842 (6th Cir. 1991) (unpublished table decision), is not helpful.  It involved an interracial couple who were denied rental housing.  A jury returned a verdict in the couple's favor, and defendants appealed, challenging the jury instruction that that "actual compensatory damages are presumed from the wrongful deprivation of civil rights."  *Id.* at *3.  The Sixth Circuit found no plain error because "[u]nder the facts of this case, an actual injury occurred merely by committing discriminatory acts in violation of the Fair Housing Act."  *Id.* at *4.

There is no legal basis for extending this concept to fair housing organizations.  When individuals are discriminated against and denied equal housing opportunities, they are directly and proximately harmed because their civil rights are violated.  The same cannot be said of a fair housing organization, which is one step removed from the discrimination.  Although a fair housing organization

7

may recover damages based on frustration of mission and diversion of resources, there must be evidence directly tying these damages to the defendant's alleged wrongdoing.  Absent evidence that the fair housing organization diverted its resources *in response to specific wrongdoing by a particular defendant*, there is no legal basis for imposing liability on that defendant.

       For example, in *Ragin v. Harry Macklowe Real Estate Co*., 6 F.3d 898 (2d Cir. 1993), the Second Circuit held that the district court, following a bench trial, did not clearly err in declining to award the fair housing organization certain damages allegedly incurred in attempting to counteract the discriminatory effects of the defendant's advertisements.  It noted that the district court had concluded that the organization failed to establish that

>        its efforts to assist equal access to housing have been frustrated by the Defendants' ads. . . . [T]here was no evidence that the [organization] was forced to increase its educational, counselling or referral services due to the Defendants' ads in particular. . . . [T]he [organization] received no complaints about the Defendants' ads and Spiro conceded that she was unaware of the impact of Defendants' ads on anyone other than the Individual Plaintiffs.

*Id.* at 909 (quoting *Ragin v. Harry Macklowe Real Estate Co.*, 801 F. Supp. 1213, 1233 (S.D.N.Y. 1992)).

       MVFHC next argues that, in holding that MVFHC had standing to pursue the claims against Connor Group, the Sixth Circuit has already impliedly determined that the alleged diversion of resources was fairly traceable to the advertisement at issue.  The Sixth Circuit stated:

8

To prove Article III standing, Miami Valley must allege: (1) an injury in fact; (2) a causal connection between the injury and the challenged conduct that is fairly traceable to the defendant's actions; and (3) that the requested relief will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

Miami Valley's mission is to "promote fair housing and eliminate housing discrimination," and it alleges that it "had to divert its resources, its staff time and energy to identify the ad and then to bring the ad to the attention of the appropriate authorities," thereby suffering a harm of $5,292.15 in costs. The Supreme Court and this Circuit have found that a drain on an organization's resources, as alleged by Miami Valley, constitutes a concrete and demonstrable injury for standing purposes. *Havens*, 455 U.S. at 379, 102 S.Ct. 1114; *Hous. Opportunities Made Equal, Inc. v. Cincinnati Enquirer, Inc., a Div. of Gannett Co., Inc.*, 943 F.2d 644, 646 (6th Cir.1991) (holding that HOME had alleged a concrete injury because it had to "devote resources to investigate and negate the impact of [advertisements]" allegedly violating the FHA); *accord Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27–29 (D.C. Cir. 1990) (holding plaintiffs had standing because their alleged injury, the depletion of resources which were diverted to enforcement actions surrounding the advertisements, was concrete and fairly traceable). This injury is fairly traceable to the Connor Group advertisements, which are at issue in this case, and Miami Valley's requested relief will redress its injury. Therefore, we find that Miami Valley has standing to bring this suit.

*Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp*., 725 F.3d 571, 576-77 (6th Cir. 2013).

The fact that the Sixth Circuit held that MVFHC had standing to pursue its claims, however, does not obviate the need for MVFHC to prove that the damages alleged were proximately caused by the posting of the "single man" advertisement. Whether a party has standing to bring a lawsuit is typically determined by the material allegations in the complaint, which must be accepted as true and

9

construed in favor of the plaintiff.  *Warth v. Seldin*, 422 U.S. 490, 501 (1975).
Standing merely opens the doors to the courthouse.  Once inside, the plaintiff
bears the burden of proving all material elements of a claim by a preponderance of
the evidence.

For a fair housing organization asserting a FHA claim, this includes the
element of proximate cause.  Several cases bear this out.  For example, in *Spann
v. Colonial Village, Inc.*, 899 F.2d 24 (D.C. Cir. 1990), the court held that the two
plaintiff housing organizations had standing, but still had to prove causation.  The
court stated that "MWPHA and FHC must ultimately prove at trial that the
defendants' illegal actions actually caused them to suffer the alleged injuries before
they will be entitled to judicial relief."  *Id.* at 29.  In addition to proving that the
defendants violated the FHA, plaintiffs also had to "prove that this violation
actually caused them to expend resources or to suffer some other concrete injury."
*Id.* at 30.

Likewise, in *City of Los Angeles v. Wells Fargo & Co.*, 22 F. Supp. 3d 1047
(C.D. Cal. 2014), the court held that, although the plaintiff, who alleged violations
of the FHA, met minimum pleading standards to establish proximate cause for
purposes of statutory standing, "the issue of proximate cause . . . will be revisited
at later stages of the litigation where the City's allegations will be put to
evidentiary proof."  *Id.* at 1058.  In a similar vein, in *McDonald v. Burton*, No.
24274, 2011 WL 6009611 (Ohio Ct. App. Dec. 2, 2011), the court held that the
fact that a housing advocacy association may have standing to pursue a claim of

housing discrimination does not necessarily mean that a claim for damages has been sustained. "To recover, a fair housing organization must establish that expenditures in education, counseling and/or outreach are necessary to counterbalance the effects of a defendant's discriminatory practices." *Id.* at *18 (quoting *Fair Hous. of Marin v. Combs*, No. C97-1247, 2000 WL 365029, at *4 (N.D. Cal. Mar. 29, 2000)).

To summarize, although an *individual* who has suffered housing discrimination may not be required to establish proximate cause, the same cannot be said for a *fair housing organization*. The fact that MVFHC has standing to pursue its FHA claim is not enough. At trial, MVFHC bears the burden of tying its alleged diversion of resources to Connor Group's posting of the "single man" advertisement. MVFHC has failed to show that it was plain error for the Court to instruct the jury otherwise. Because proximate cause is a required element of liability -- and one that MVFHC has yet to establish -- the Court overrules MVFHC's request to enter judgment in its favor and award attorneys' fees and costs.

**B.    The Jury's Verdict Concerning Proximate Cause Was Against the Weight of the Evidence**

MVFHC has moved for a partial new trial pursuant to Federal Rule of Civil Procedure 59(a). That Rule provides, in relevant part:

(1) Grounds for New Trial. The court may, on motion, grant a new trial on *all or some* of the issues--and to any party--as follows:

(A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . .

11

Fed. R. Civ. P. 59(a)(1) (emphasis added). As a general rule, courts have interpreted Rule 59(a)(1)(A) to permit a new trial "if the verdict is against the weight of the evidence, if the damages award is excessive, or if the trial was influenced by prejudice or bias, or otherwise unfair to the moving party." *Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000)). Here, MVFHC argues that the jury's verdict concerning proximate cause was against the weight of the evidence.

As the Sixth Circuit has explained, even though a district court has discretion to grant a new trial if it "determines that the verdict is clearly against the weight of the evidence," it cannot "set aside the verdict simply because it believes that another outcome is more justified." *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007). If the verdict is "one which the jury reasonably could have reached," the motion for a new trial should usually be denied. *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 995 (6th Cir. 2012).

Connor Group suggests four possible justifications for the jury's finding that MVFHC failed to prove, by a preponderance of the evidence, that Connor Group's violation of the fair housing laws was a direct and proximate cause of harm to MVFHC.

First, Connor Group points to trial testimony indicating that MVFHC found *many* Connor Group Craigslist ads to be problematic. Tr. at 50-51, 77-84, 137-38, 145. Connor Group maintains that a reasonable jury could have found that MVFHC's alleged damages are attributable, not to the "single man" ad that was

12

the sole focus of the trial, but to all of these other advertisements instead. Although the "single man" ad was posted in April of 2009, Connor Group calculates that more than 78% of MVFHC's alleged damages were incurred more than 10 months later.  Tr. at 79, 137-48.

Second, Connor Group argues that the jury reasonably could have concluded that MVFHC did not prove that it "incurred" any damages or "diverted" any resources in response to the "single man" ad.  Rather, the jury could have found that MVFHC was just going about its normal business activities, reviewing advertising, educating the public about fair housing law, and filing complaints of discrimination.

Third, Connor Group contends that the jury reasonably could have rejected the testimony of Jim McCarthy, John Zimmerman and Anita Schmaltz on credibility grounds.  It cites to inconsistencies in McCarthy's testimony about how many employees were monitoring ads, whether he previously failed to make any distinction between a "bachelor apartment" and a "bachelor pad," and whether he knew that one of MVFHC's board members worked for one of Connor Group's competitors.  Tr. at 186-87, 199-203.  Connor Group also cites to inconsistencies in Zimmerman's testimony about the amount of time he allegedly spent responding to the "single man" ad, and his apparent confusion over the contents of the "Words and Phrases" list.  Tr. at 54-57, 60-70, 74-83.  Connor Group further argues that if the jury found that 78% of the damages claimed by MVFHC were

unrelated to the "single man" ad, the jury could have reasonably rejected the remainder of the testimony concerning causation.

Finally, Connor Group argues that some combination of the above could have caused the jury to reach the conclusion it did with respect to proximate cause.

MVFHC concedes that the *degree* of harm it suffered as a proximate result of Connor Group's posting of the "single man" ad may be subject to dispute. It argues, however, that, based on the evidence presented, no reasonable jury could have found that MVFHC suffered *no* harm and diverted *no* resources as a result of the posting of this particular ad. The Court agrees. None of Connor Group's proffered justifications can overcome the Court's strong belief that the jury reached a "seriously erroneous result" with respect to the question of causation. *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996).

At trial, McCarthy, Zimmerman and Schmaltz all testified about the numerous actions taken by MVFHC in response to Connor Group's advertising on Craigslist. Schmaltz and McCarthy each testified about how the "single man" ad undermined MVFHC's mission. Schmaltz testified that her work on this particular ad took her away from doing other worthwhile work. Tr. at 136-37, 147-48, 181-84. Likewise, Zimmerman testified that, in response to this ad and others like it, he spent time developing materials to educate property managers and leasing agents about advertising pitfalls associated with using words like "bachelor pad" and "single man." In doing so, he had to delay other projects. Tr. at 54-56, 86.

14

Even if some of the damages claimed are attributable, in whole or in part, to advertising other than the "single man" ad, unrebutted trial testimony indicates that MVFHC employees did, in fact, spend some time directly responding to this particular ad. Most significantly, when Anita Schmaltz discovered the "single man" ad, she immediately brought it to John Zimmerman's attention. Within weeks, MVFHC filed an administrative complaint with the Ohio Civil Rights Commission ("OCRC"). Tr. at 52, 134-35. This administrative complaint was limited solely to the "single man" ad. Doc. #1-2, PageID#9. At the very least, the time MVFHC employees spent drafting this administrative complaint and responding to related inquiries from the OCRC must be deemed attributable solely to the "single man" ad.

Connor Group cites to *Fair Housing Center of the Greater Palm Beaches, Inc. v. Shutters Condominium Association, Inc.*, 389 F. App'x 952 (11th Cir. 2010), in support of its argument that the jury was entitled to discredit the witnesses' testimony that MVFHC suffered any harm as a result of the "single man" ad. In that case, the appellate court affirmed the district court's denial of the plaintiff's motion for a new trial, finding that the jury could have reasonably concluded that the plaintiff fair housing organization "failed to establish a causal connection between its alleged damages and the discriminatory advertising." *Id.* at 955. That case, however, is factually distinguishable; the court noted that, although the plaintiff alleged that it suffered injuries, it "offered scant evidence about its damages." *Id.* at 956. In contrast, MVFHC did present significant evidence of

15

specific damages it allegedly incurred as a direct result of Connor Group's posting of the "single man" ad.

The Court rejects Connor Group's assertion that, because of certain inconsistencies in the testimony of MVFHC's witnesses, the jury may have reasonably elected to reject *all* of their testimony concerning damages allegedly suffered by MVFHC as a result of this one ad.  Viewing the testimony of these witnesses as a whole, the inconsistencies cited are simply not significant enough to justify completely discrediting all of their testimony.

After reviewing the parties' briefs and the trial transcript, the Court concludes that the jury's verdict concerning proximate cause was clearly against the weight of the evidence.  A miscarriage of justice will result if the verdict is allowed to stand.  Accordingly, a new trial is warranted.  The only remaining question is whether the entire case should be re-tried, or whether it is appropriate to hold a partial new trial limited solely to the issues of causation and damages.

## C.    Partial New Trial Limited to Issues of Causation and Damages is Warranted

As noted above, Rule 59(a) authorizes the Court to grant a partial new trial. In *Gasoline Products v. Champlin Refining Co.*, 283 U.S. 494 (1931), the Supreme Court held that the Seventh Amendment right to a jury trial does not "require that an issue once correctly determined . . . be tried a second time, even though justice demands that another distinct issue, because erroneously determined, must again be passed on by a jury."  *Id.* at 498.  Nevertheless, a partial new trial is

16

appropriate only if it "clearly appears that the issue to be retried is so distinct and

separable from the others that a trial of it alone may be had without injustice." *Id.*

at 500.

A full retrial is generally required in two instances.  As the Tenth Circuit has

explained:

> The first, and more common, is when an error or insupportable
> damages award calls into question the propriety of the *original* jury's
> finding of liability. The most common example is a compromise
> verdict, *i.e.*, an award of suspiciously low damages in a case of
> closely contested liability. *See, e.g., National R.R. Passenger Corp. v.*
> *Koch Indus., Inc.*, 701 F.2d 108, 110 (10th Cir. 1983); 11 Charles
> Alan Wright, *et al.*, *supra*, § 2814, at 154–56. The second rationale
> for requiring a retrial on all issues does not look back to the propriety
> of the original jury's finding on liability. It instead looks forward to the
> new jury's inquiry. That rationale bars a limited retrial when two
> issues are inextricably intertwined. If a district court were to retry only
> one of two such intertwined issues to a second jury, while
> maintaining the vitality of the first jury's findings on the other issue, it
> would cause confusion and uncertainty and, thus, an unfair trial. *See*
> *Gasoline Prods.*, 283 U.S. at 500, 51 S.Ct. 513; 11 Wright, *et al.*,
> *supra*, § 2814, at 156–57 & n.14.

*Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221, 1255-56

(10th Cir. 1999) (footnote omitted).

Connor Group argues that a full retrial is required in this case because: (1)

there is a possibility that the jury may have rendered a compromise verdict; and (2)

the issues of liability, proximate cause and damages are inextricably intertwined.

Connor Group first argues that there is evidence that the jury reached a

compromise verdict, finding in MVFHC's favor on the question of whether the

"single man" ad violated the law, but finding in Connor Group's favor on the

17

question of causation and damages.  In support of this argument, Connor Group cites to *Schuerholz v. Roach*, 58 F.2d 32 (4th Cir. 1932).  In *Schuerholz*, the plaintiff lost an eye when a bottle of soda exploded.  He filed suit against the bottler, alleging negligence.  Although the jury found that the bottler was liable, it awarded just $625.00 to the plaintiff.  The court held that this award "for the loss of an eye was grossly unjust and inadequate," and gave rise to an inference that the jury had disagreed as to the defendant's liability and reached a "compromise of the controversy at the expense of both litigants." *Id.* at 34.

In contrast to *Schuerholz*, nothing in this case supports an inference that the jury rendered a compromise verdict because it was unable to agree about whether the ad violated the law.  Connor Group points only to the fact that when the jury decided to go home and continue deliberating the following day, it told the Court that it still had some issues to resolve; the next morning, however, the jury deliberated just another hour-and-a-half before reaching a verdict.  The Court fails to see how this, standing alone, supports a finding of a compromise verdict, particularly since the jury deliberated a total of just two-and-a-half hours over the two days.

Moreover, even if, as Connor Group argues, it was a "close question" as to whether the "single man" ad violated the law, there is no evidence to call into question the jury's verdict on that issue.  Notably, the jury answered "yes" to each and every question concerning the illegality of the advertisement, concluding that

the ad violated federal and state law, and discriminated on the basis of both sex and familial status.

Connor Group also argues that the issues of liability are inextricably intertwined with the questions of proximate cause and damages. It maintains that the evidence presented would be nearly identical regardless of the scope of retrial. Citing *Colonial Leasing of New England, Inc. v. Logistics Control International*, 770 F.2d 479, 482 (5th Cir. 1985), Connor Group argues that where there is overlapping proof, the jury, in all fairness, should be entitled to retry all of the issues.

The Court finds, however, that the question of whether Connor Group's "single man" ad violated federal and state fair housing law is completely separate and distinct from the question of whether the posting of that ad was the proximate cause of harm to MVFHC and, if so, the extent of that harm. A partial new trial, limited to the questions of proximate cause and damages, may therefore be had without unfair prejudice.[2]

---

[2]   As the court noted in *Morrison Knudsen*, the use of special interrogatories, as opposed to a general verdict form, allows the court to more easily "untangle" the basis for the jury's decision. 175 F.3d at 1254-55. Here, based on the special interrogatories, we know that the jury determined that the "single man" ad violated federal and state housing law by indicating a preference, limitation, specification, or discrimination based on sex and familial status. The jury found, however, that MVFHC failed to prove that the violation was a direct and proximate cause of harm to MVFHC. It, therefore, did not reach the question of damages.

19

Little overlapping proof is required.  As MVFHC notes, the evidence required to determine whether the ad violated the law focused on whether Connor Group published the "single man" ad and whether the ad related to housing.  The jury then had to determine whether an "ordinary reader" would interpret the ad as indicating a preference, limitation, discrimination or specification based on sex or familial status.  In contrast, evidence needed to establish proximate cause and damages focuses almost entirely on MVFHC's response to the "single man" ad.

Connor Group argues that, to the extent that the jury's verdict on the proximate cause issue may have been influenced, at least in part, by the overall lack of credibility of MVFHC's witnesses, the jury should be permitted to hear the entire case so it can reevaluate the credibility of those witnesses.  Connor Group, however, fails to point to any specific testimony that would necessarily be excluded as irrelevant were the re-trial to be limited to the question of proximate cause and damages.  Likewise, although Connor Group argues that granting a partial new trial would be unfair because MVFHC also seeks punitive damages, MVFHC notes that nothing prevents Connor Group from introducing whatever evidence it believes is relevant to the question of punitive damages, should that question be reached.

For the reasons set forth above, the Court concludes that a partial new trial, limited to the issues of proximate cause and damages, may be had without injustice.  These issues are distinct and separable from the question of whether the

"single man" ad violates federal and state fair housing laws. Accordingly, the Court will set the case for partial re-trial.

## III. Conclusion

Plaintiff's Amended Motion for Partial New Trial Pursuant to Rule 59, Doc. #166, is SUSTAINED IN PART and OVERRULED IN PART. The Court rejects Plaintiff's argument that it was plain error to instruct the jury that proximate cause is a required element. Nevertheless, because the jury's verdict on the question of proximate cause was against the weight of the evidence, Plaintiff is entitled to a new trial, which will be limited to the issues of proximate cause and damages. A telephone conference call, leading to the agreement upon and the filing of a scheduling order, will be convened in the near future.

Date: February 26, 2015

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

21