IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MIAMI VALLEY FAIR HOUSING  :
CENTER, INC.,

    Plaintiff,

  v.  :  Case No. 3:10-cv-83

THE CONNOR GROUP, A REAL    JUDGE WALTER H. RICE
ESTATE INVESTMENT FIRM,  :
LLC, *et al.*,

    Defendants.

---

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION
FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR
INTERLOCUTORY APPEAL (DOC. #177)

---

On February 26, 2015, the Court issued a Decision and Entry Sustaining in Part and Overruling in Part Plaintiff's Amended Motion for Partial New Trial Pursuant to Rule 59. Doc. #174. This matter is currently before the Court on Defendant's Motion for Reconsideration or, in the Alternative, for Interlocutory Appeal. Doc. #177. For the reasons set forth below, that motion is overruled in its entirety.

I. **Background and Procedural History**

Plaintiff, Miami Valley Fair Housing Center, Inc. ("MVFHC"), filed suit against The Connor Group, A Real Estate investment Firm, LLC, ("The Connor Group"),

alleging that a Craigslist advertisement, posted by an employee of The Connor Group, discriminated on the basis of familial status and sex, in violation of federal and state fair housing laws. The ad stated that "our one bedroom apartments are a great bachelor pad for any single man looking to hook up." Doc. #1-1, PageID#7.

This case has been tried twice already. At the first trial, the jury concluded that the advertisement in question did not violate federal or state housing laws. MVFHC appealed, citing an allegedly erroneous jury instruction, and the Sixth Circuit ordered a retrial. *Miami Valley Fair Hous. Ctr., Inc. v. Connor Group*, 725 F.3d 571 (6th Cir. 2013). At the second trial, the jury concluded that, although the ad violated fair housing laws, MVFHC had failed to prove that the violation was a direct and proximate cause of any harm to MVFHC. Accordingly, the jury did not reach the question of damages. After judgment was entered in favor of The Connor Group, MVFHC moved for a partial new trial, Docs. ##154, 166.

On February 26, 2015, the Court issued a Decision and Entry Sustaining in Part and Overruling in Part Plaintiff's Amended Motion for Partial New Trial Pursuant to Rule 59. Doc. #174. The Court rejected MVFHC's argument that proximate cause is not a required element of discrimination claims brought by a fair housing organization. The Court agreed, however, that, because the jury's verdict concerning proximate cause was against the weight of the evidence, a new trial was warranted. The Court also agreed that, because the issues of proximate cause and damages were distinct and separable from the issue of whether the

advertisement violated fair housing laws, it was appropriate to order a *partial* new trial limited to the question of proximate cause and damages.

On April 20, 2015, The Connor Group, now represented by new counsel, filed a Motion for Reconsideration or, in the Alternative, for Interlocutory Appeal. Doc. #177. That motion is fully briefed and ripe for decision.

## II.   Motion for Reconsideration

A motion for reconsideration may be granted in four limited circumstances: (1) to accommodate an intervening change in controlling law; (2) to account for newly discovered evidence; (3) to correct a clear error of law; or (4) to prevent manifest injustice. *See GenCorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

Here, The Connor Group argues that the Court clearly erred in failing to give due deference and a presumption of validity to the jury's verdict on the proximate cause issue. In the alternative, The Connor Group argues that it would be highly prejudicial to limit any new trial to the questions of proximate cause and damages.

MVFHC contends that The Connor Group has simply rehashed arguments already considered by the Court. It maintains that the Court properly found that the jury's verdict on the proximate cause issue was against the weight of the evidence, and that a partial new trial would not be unfair. For the reasons set forth below, the Court finds that The Connor Group has failed to show that reconsideration of the February 26, 2015, Decision and Entry is warranted.

3

### A. Verdict Against Weight of Evidence

The Connor Group first asks the Court to reconsider its holding that the jury's finding on the issue of proximate cause was against the weight of the evidence. The Connor Group seeks reinstatement of the defense verdict on this basis.

"A new trial is appropriate when the jury reaches a 'seriously erroneous result as evidenced by . . . the verdict being against the [clear] weight of the evidence.'" *Cummins v. BIC USA, Inc.*, 727 F.3d 506, 509 (6th Cir. 2013) (quoting *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 414 (6th Cir. 2012)). In determining whether the verdict is against the clear weight of the evidence, the court is permitted to "compare the opposing proofs and weigh the evidence." *Toth v. Yoder Co.*, 749 F.2d 1190, 1197 (6th Cir. 1984).

As The Connor Group notes, however, the district court must be careful not to usurp the jury's function as the trier of fact. Accordingly, the court should not overturn a jury's verdict as being against the weight of the evidence if the verdict is one that could reasonably have been reached, even if the court believes that a different outcome is more justified. *See Holmes v. City of Massillon*, 78 F.3d 1041, 1047-48 (6th Cir. 1996); *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 534 (6th Cir. 2014).

For the reasons expressed in its February 26, 2015, Decision and Entry, Doc. #174, the Court remains firmly convinced that, based on the evidence presented, the jury's finding—that the "single man" advertisement was not the

4

direct and proximate cause of *at least some portion* of the damages claimed by MVFHC—is simply untenable. Even giving due deference to the jury's collective wisdom and the jury's role as the trier of fact, the Court concludes that the jury's finding with respect to the issue of proximate cause was seriously erroneous.

The Connor Group correctly points out that there was trial testimony from which the jury could have reasonably concluded that not *all* of the damages claimed by MVFHC were a direct and proximate result of The Connor Group's posting of the "single man" advertisement. MVFHC employees testified that they were also concerned about *other* advertisements subsequently posted by The Connor Group, and by various other housing providers. These collective concerns prompted MVFHC to revise its educational materials and increase its monitoring of advertising. In addition, The Connor Group notes that 78% of the hours allegedly devoted to efforts to combat the discriminatory effects of the "single man" ad were recorded *more than 10 months* after that ad was posted. The Court agrees that, based on the evidence presented, a reasonable jury could have found that some of the claimed damages were not directly and proximately caused by the posting of the "single man" ad, but were instead attributable to other ads.

Nevertheless, even though the precise *extent* of the damages suffered by MVFHC as a direct and proximate cause of The Connor Group's publication of the "single man" ad is subject to dispute, the clear weight of the evidence demonstrates that MVFHC suffered *some* harm and diverted *some* resources in direct response to that ad. At the very least, as noted in the February 26, 2015,

Decision and Entry, the time that MVFHC employees spent drafting the administrative complaint that was filed with the Ohio Civil Rights Commission ("OCRC") concerning the "single man" ad, and responding to inquiries from the OCRC about that one particular ad, must be deemed attributable solely to that ad.

The Connor Group argues that, because MVFHC employees "routinely" monitored advertisements and filed administrative complaints, time spent on these tasks cannot constitute damages proximately caused by the "single man" ad. The Court disagrees.

To establish standing to sue, a plaintiff must allege an injury-in-fact, fairly traceable to the defendant's allegedly unlawful conduct, and likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Accordingly, the Sixth Circuit's pronouncements concerning what a fair housing organization must do to establish standing also provide guidance concerning what types of injuries or damages may be recoverable by the organization.

In *Fair Housing Council, Inc. v. Village of Olde St. Andrews, Inc.*, 210 F. App'x 469 (6th Cir. 2006), the Sixth Circuit addressed the question of what a fair housing organization must prove in order to establish a cognizable injury for purposes of Article III standing. It noted that courts generally agree that a fair housing organization can establish standing "where it can show that the defendant's alleged violations of the Fair Housing Act caused it to divert resources

6

from other projects or devote additional resources to a particular project in order to combat the alleged discrimination." *Id.* at 474.

However, the circuit courts are split on "the extent to which they will consider injury related to litigation in reviewing standing." *Id.* Some circuits require a showing of "a concrete injury that is completely independent from the economic and non-economic costs of the litigation." *Id*. For example, in *Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers*, 141 F.3d 71, 80 (3d Cir. 1998), a case heavily relied upon by The Connor Group, the Third Circuit held that "the pursuit of litigation alone cannot constitute an injury sufficient to establish standing under Article III." Yet other circuits are far more lenient, requiring a fair housing organization to show only that it "diverted resources toward litigation to counteract the defendant's housing discrimination." *Olde St. Andrews*, 210 F. App'x at 474.

The Sixth Circuit adheres to this more lenient standard. In *Olde St. Andrews,* the court explained that, "[t]hough we require a plaintiff to show some injury that is independent of the costs of litigation, we have interpreted that standard narrowly, finding that costs related to prelitigation investigation can form the basis for standing." *Id.* at 475 (citing *Hous. Opportunities Made Equal, Inc. v. Cincinnati Enquirer, Inc.*, 943 F.2d 644, 646 (6th Cir. 1991)). The court found that the Fair Housing Council suffered a concrete injury when it diverted funds to hire testers to investigate a possible violation of the Fair Housing Act. The court explained that "[i]n our world of scarce resources, every expenditure of money,

7

time or other resources results in the loss of the benefit that would have resulted if the same time or money had been spent on something else." *Id.* at 477.

Given this low standard, it comes as no surprise that the Sixth Circuit previously determined that MVFHC has standing to sue, based solely on allegations that the organization "had to divert its resources, its staff time and energy to identify the ad and then to bring the ad to the attention of the appropriate authorities." *Miami Valley Fair Hous. Ctr., Inc.*, 725 F.3d at 576-77. If MVFHC's diversion of resources directed at identifying the ad and filing an administrative complaint with the OCRC is sufficient to establish standing, it follows that MVFHC may be able to recover damages for time and energy spent on these same tasks.

The Connor Group insists that a fair housing organization should not be guaranteed damages simply for filing an administrative complaint. The Court agrees but, of course, that situation will never arise. An administrative complaint contains nothing more than *allegations* of wrongdoing; however, damages are not recoverable in court until the fair housing organization actually proves that the defendant has violated the fair housing laws. Once it establishes liability, a fair housing organization is entitled to recover damages for the diversion of resources and frustration of mission directly and proximately caused by the defendant's discriminatory conduct.

It does not matter that MVFHC employees routinely monitored advertising for violations of fair housing laws, and routinely filed administrative complaints when they found a violation that they believed warranted attention. But for The

8

Connor Group's allegedly discriminatory acts, MVFHC's limited resources could have been directed elsewhere. *See Olde St. Andrews*, 210 F. App'x at 477 (holding that even though the organization had already allocated funds for the use of testers, the use of those funds to investigate defendant's alleged violation of the fair housing laws constituted a concrete injury because it shrunk the pool of available resources). Nor does it matter that MVFHC was not acting in response to an outside complaint about the "single man" ad. *See id.* at 478 ("Regardless of whether an organization learns of potential discrimination through independent complaints or through its own observations, any action it takes in combating that discrimination is fairly traceable to the defendant's discriminatory acts.").

The Connor Group also argues that, in contrast to the fair housing organization in *Olde St. Andrews*, MVFHC did not send any testers to the property or engage in any other prelitigation "investigation." MVFHC simply saw the ad, determined that it likely violated the law, and then filed the administrative complaint with the OCRC. The relevant inquiry, however, is simply whether MVFHC diverted any of its resources in response to The Connor Group's posting of the "single man" ad. As previously noted, the Sixth Circuit has already determined that MVFHC's allegations that it "had to divert its resources, its staff time and energy to identify the ad and then to bring the ad to the attention of the appropriate authorities" were sufficient to establish an injury-in-fact for purposes of standing. *Miami Valley Fair Hous. Ctr., Inc.*, 725 F.3d at 576-77.

9

Evidence shows that MVFHC employees spent some measurable amount of time drafting and filing the OCRC complaint about the "single man" ad, and responding to related inquiries from the OCRC. Therefore, although a reasonable jury may have found that The Connor Group's posting of the "single man" ad was not the direct and proximate cause of *all* of the damages claimed by MVFHC, the jury's finding that this ad was not the direct and proximate cause of *at least some portion* of the damages claimed by MVFHC is against the clear weight of the evidence.

The Connor Group again cites to *Fair Housing Center of the Greater Palm Beaches, Inc. v. Shutters Condominium Association, Inc.*, 389 F. App'x 952, 955 (11th Cir. 2010), in which the court upheld a jury verdict in favor of the defendant, finding that, based on the evidence presented, a jury could have reasonably concluded that the plaintiff fair housing organization failed to establish a causal connection between its alleged damages and the discriminatory advertising. This case, however, is distinguishable for the reasons cited in the Court's February 26, 2015, Decision and Entry.

For the reasons expressed in that Decision and Entry, a miscarriage of justice will result if the jury's finding on the proximate cause issue is permitted to stand. Accordingly, the Court OVERRULES The Connor Group's Motion for Reconsideration of this issue.

10

### B. Partial New Trial Not Prejudicial

Citing *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931), The Connor Group again argues that if a retrial is ordered, it should be a *full* trial on liability and damages, because the issues of proximate cause and damages are so interwoven with the issue of liability that a partial new trial would be unfair and prejudicial. According to The Connor Group, asking a jury to consider the issues of proximate cause and damages, without also evaluating whether the advertisement violates the fair housing laws, will create confusion and uncertainty. The Connor Group contends that, if the jury is told that the advertisement is illegal, the jury will presume that proximate cause exists and that damages should be awarded. The Connor Group further argues that a jury will not be able to determine the "reasonableness" of any damage award without also evaluating whether the advertisement violated the law.

These arguments are not new; they were fully considered by the Court in ruling on Plaintiff's Motion for Partial New Trial. The Seventh Amendment does not "require that an issue once correctly determined . . . be tried a second time, even though justice demands that another distinct issue, because erroneously determined, must again be passed on by a jury." *Gasoline Prods.*, 283 U.S. at 498. For the reasons expressed in its February 26, 2015, Decision and Entry, Doc. #174, PageID##7606-11, the Court continues to believe that a partial new trial, limited to the issues of proximate cause and damages, may be had without

11

x

injustice. Therefore, the Court OVERRULES The Connor Group's request for a full retrial of this case.

**III.	Alternative Motion for Interlocutory Appeal**

In the event the Court declines to reconsider its order granting a partial new trial, The Connor Group asks the Court to certify three questions for interlocutory appeal: (1) whether the jury's presumptively valid determination on proximate cause should be overturned as against the manifest weight of the evidence; (2) whether a fair housing organization suffers compensable damages based on the routine filing of an administrative complaint and cooperation with the administrative agency; and (3) whether, after a finding of statutory liability, a trial solely on proximate cause and damages would cause confusion and uncertainty, and deny The Connor Group a fair trial.

The statute governing interlocutory appeals provides, in relevant part, as follows:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). Interlocutory appeals, however, are generally disfavored, and this statute is to be "sparingly applied." *Cardwell v. Chesapeake & Ohio Ry. Co.*, 504 F.2d 444, 446 (6th Cir. 1974) (citation omitted). There must be

"exceptional circumstances [to] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (citation omitted).

None of the questions posed by The Connor Group justifies an interlocutory appeal in this case. The first question—whether the jury's presumptively valid determination on proximate cause should be overturned as against the manifest weight of the evidence—does not involve a controlling question of law. Rather, it involves a matter committed to the district court's discretion. *See* Fed. R. Civ. P. 59(a)(1) ("The court *may*, on motion, grant a new trial on all or some of the issues . . . ") (emphasis added). Such a question falls outside the scope of an interlocutory appeal. *See In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002) ("A legal question of the type envisioned in § 1292(b) . . . generally does not include matters within the discretion of the trial court.").

In fact, the Sixth Circuit has held that "the district court's decision on the weight of the evidence is inherently factual, not legal." *In re Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 606 F.3d 855, 864 (6th Cir. 2010). Where, as here, the movant does not argue that the court applied the wrong legal standard in weighing the evidence, but simply disagrees with the court's evaluation, an interlocutory appeal is not warranted. *Id. See also McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004) (holding that § 1292 certification should be reserved "for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the

13

record in order to determine the facts"). Because the first question posed by The Connor Group does not involve a question of controlling law, § 1292(b) certification is not appropriate.

The second question posed is whether a fair housing organization suffers compensable damages based on the routine filing of an administrative complaint and cooperation with the administrative agency. For reasons explained above, the Court does not find this to be a question of law as to which there is substantial ground for difference of opinion. Under current Sixth Circuit law, this diversion of resources is compensable. See Miami Valley Fair Hous. Ctr., Inc., 725 F.3d at 576-77. For this reason, certification of the second question under § 1292(b) is not warranted.[1]

The third question—whether, under the circumstances presented here, a new trial limited to the issues of proximate cause and damages would cause confusion and uncertainty, and deny The Connor Group a fair trial—is not

---

[1] Moreover, even if there were a substantial ground for difference of opinion, this is not a controlling legal issue. A legal issue may be deemed "controlling" only "if it could materially affect the outcome of the case." In re City of Memphis, 293 F.3d at 351. In holding that the jury's verdict with respect to the question of proximate cause is against the clear weight of the evidence, the Court did rely heavily on Anita Schmaltz's unrebutted testimony concerning the administrative complaint filed with the OCRC in direct response to the "single man" advertisement. However, this was not the *sole* basis for the Court's decision. The Court also cited testimony of Jim McCarthy, John Zimmerman, and Anita Schmaltz, concerning other ways in which the advertisement in question undermined MVFHC's mission and caused it to divert its resources. Because the Court's finding—that the jury's verdict on the question of proximate cause was against the weight of the evidence—was not based solely on evidence related to the filing of the administrative complaint, the question posed cannot be deemed a *controlling* legal issue.

14

appropriate for interlocutory appeal either. Again, this is a question committed to the discretion of the district court. *See* Fed. R. Civ. P. 59(a)(1). The Connor Group may disagree with the Court's conclusion that the questions of proximate cause and damages are so distinct and separable from the question of whether the advertisement in question violates fair housing laws that a trial limited to those issues may be had without injustice. However, this disagreement does not warrant an interlocutory appeal.

Finally, it cannot be said that an immediate appeal of the Court's decision on *any* of the three questions posed would materially advance the ultimate termination of this litigation, save substantial judicial resources, or save the litigants unnecessary expense. Interlocutory appeals tend to be most useful early in a case, when a decision on a controlling issue of law might eliminate the need for protracted and expensive litigation. *See United States ex rel. Elliott v. Brickman Group Ltd., LLC*, 845 F. Supp. 2d 858, 871 (S.D. Ohio 2012).

Given the fact that this case has already been tried twice to a jury, this is not one of those cases. A third trial, limited to the issues of proximate cause and damages, will take, at most, a few days. In all likelihood, very limited additional preparation will be needed. In contrast, the time and expense associated with an interlocutory appeal would be considerable. Any benefit to be gained from a piecemeal approach is minimal, particularly under the circumstances presented here. It is far better to allow this litigation to run its course at the district court level. Thereafter, the parties may appeal any and all issues they deem appropriate.

See *Kraus v. Bd. of Cnty. Rd. Comm'rs for Kent Cnty.*, 364 F.2d 919, 922 (6th Cir. 1966) (holding that it was more preferable to complete a short jury trial than to certify an issue for interlocutory appeal); *Tri Cnty. Wholesale Distrib., Inc. v. Labatt USA Operating Co., LLC*, No. 2:13-cv-317, 2015 WL 631092, at *8 (S.D. Ohio Feb. 12, 2015) (finding that an interlocutory appeal would not materially advance the ultimate termination of the litigation, where all discovery had been completed, and all dispositive issues had been resolved on summary judgment, leaving only the need for a short hearing on the question of costs owed to plaintiffs).

The Court therefore OVERRULES The Connor Group's alternative request to certify the three issues for interlocutory appeal.

### IV. Conclusion

For the reasons stated above, the Court OVERRULES Defendant's Motion for Reconsideration or, in the Alternative, for Interlocutory Appeal, in its entirety. Doc. #177.

Date: July 21, 2015

_____
WALTER H. RICE
UNITED STATES DISTRICT JUDGE