IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MIAMI VALLEY FAIR HOUSING
CENTER, INC.,

    Plaintiff,

v.

THE CONNOR GROUP, et al.,

    Defendants.

:
:
:
:
:

Case No. 3:10-cv-83

JUDGE WALTER H. RICE

---

DECISION AND ENTRY <u>OVERRULING AS MOOT</u> DEFENDANT'S MOTION IN LIMINE NO. 1 TO EXCLUDE ARGUMENTS, STATEMENTS AND EVIDENCE RELATING OR REFERRING TO "VICTIMS" OF THE CONNOR GROUP'S ADVERTISING PRACTICES (DOC. #186), DEFENDANT'S MOTION IN LIMINE NO. 2 TO EXCLUDE OTHER ADVERTISEMENT EVIDENCE (DOC. #187), AND DEFENDANT'S MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE OF ANY OTHER COMPLAINTS REGARDING THE CONNOR GROUP'S ADVERTISING AND ADVERTISING PRACTICES (DOC. #188); <u>OVERRULING</u> DEFENDANT'S MOTION IN LIMINE NO. 4 TO EXCLUDE EVIDENCE OF SETTLEMENT EFFORTS BY THE PARTIES AND ANY MONETARY VALUE ASSIGNED THERETO (DOC. #189), AND DEFENDANT'S MOTION IN LIMINE NO. 5 TO EXCLUDE EVIDENCE OF TIME AND RESOURCES EXPENDED BY MIAMI VALLEY FAIR HOUSING CENTER, INC. AFTER MAY 19, 2009 (DOC. #190); <u>OVERRULING AS MOOT</u> DEFENDANT'S MOTION IN LIMINE NO. 6 TO EXCLUDE EVIDENCE REGARDING LICENSURE AND TRAINING REQUIREMENTS SET FORTH IN O.R.C. § 4735.02 (DOC. #191), AND DEFENDANT'S MOTION IN LIMINE NO. 7 TO EXCLUDE EVIDENCE REGARDING NOVEMBER 12, 2009 OHIO CIVIL RIGHTS COMMISSION PROBABLE CAUSE FINDING (DOC. #192); <u>OVERRULING</u> DEFENDANT'S MOTION IN LIMINE NO. 8 TO EXCLUDE EVIDENCE OF TIME ENTRIES ASSOCIATED WITH DAYTON DAILY NEWS INQUIRIES (DOC. #194), AND DEFENDANT'S MOTION IN LIMINE NO. 9 TO EXCLUDE REFERENCES TO THE SECOND JURY'S LIABILITY FINDING (DOC. #195); <u>RESERVING RULING</u> ON DEFENDANT'S MOTION IN LIMINE NO. 10 TO EXCLUDE NEW OR ADDITIONAL EVIDENCE (DOC. #197); <u>OVERRULING</u> PLAINTIFF'S JANUARY 14, 2016 TRIAL MOTION IN LIMINE (DOC. #193)

Plaintiff, Miami Valley Fair Housing Center, Inc., alleged that Defendant, The Connor Group, posted an advertisement that discriminated on the basis of sex and familial status, in violation of federal and state fair housing laws. That ad stated that "[o]ur one bedroom apartments are a great bachelor pad for any single man looking to hook up." A jury agreed that the ad was discriminatory, but found that Plaintiff had failed to prove that the posting of the ad directly and proximately caused any damage to Plaintiff. Judgment was entered in favor of The Connor Group.

Thereafter, the Court sustained Plaintiff's Motion for Partial New Trial, concluding that the jury's finding on the proximate cause issue was against the weight of the evidence. A partial new trial, limited to the issues of proximate cause and damages, is set to begin on January 14, 2016. This matter is currently before the Court on numerous motions in limine filed by both parties. Docs. ##186-195, 197.

I. **Motions in Limine Generally**

Although neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize the Court to rule on an evidentiary motion in limine, the Supreme Court has noted that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

The purpose of a motion in limine is to allow the Court to rule on issues pertaining to evidence in advance of trial in order both to avoid delay and ensure an

evenhanded and expeditious trial.  *See Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp.2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).  Pretrial orders also often save the parties time and cost in preparing for trial and presenting their cases.

Courts are generally reluctant to grant broad exclusions of evidence in limine, however, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence."  *Koch v. Koch Indus., Inc.*, 2 F. Supp.2d 1385, 1388 (D. Kan. 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).  A court should not make a ruling in limine unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible.  *Indiana Ins. Co.*, 326 F. Supp.2d at 846; *Koch*, 2 F. Supp.2d at 1388.  If this high standard is not met, evidentiary rulings should be deferred so that the issues may be resolved in the context of the trial.  *Indiana Ins. Co.*, 326 F. Supp.2d at 846.

II.  Defendant's Motions in Limine (Docs. ##186-92, 194-95, 197)

 A.  No. 1:  To Exclude Arguments, Statements and Evidence Relating or Referring to "Victims" of The Connor Group's Advertising Practices (Doc. #186)

Given that there is no evidence that anyone other than Plaintiff's employees viewed the advertisement in question, Defendant seeks to exclude any argument or suggestion that the ad caused harm to, or was viewed by, any individual "victims." Plaintiff does not oppose Defendant's request, and has indicated that it does not

3

plan to refer to any "victims" of the discriminatory ad.[1] Defendant's motion is therefore OVERRULED AS MOOT.

B.     **No. 2: To Exclude Other Advertisement Evidence (Doc. #187)**

Defendant asks the Court to exclude all references to other "single" ads, similar ads, and any other ads posted by The Connor Group or any other housing provider. In general, Plaintiff does not oppose Defendant's request, and does not plan to introduce any other specific advertisements. Defendant's motion is therefore OVERRULED AS MOOT.

Nevertheless, Plaintiff does plan to present testimony concerning the danger of "copycat" ads and trends in advertising. Plaintiff argues that such testimony is relevant to the necessity and appropriateness of Plaintiff's response to the ad in question. Defendant notes, however, that there is no evidence that anyone other than Plaintiff's employees viewed the ad, and no evidence that anyone duplicated it. Defendant therefore argues that the alleged risk of "copycat" ads is purely speculative, and that it would be improper to allow Plaintiff to rely on this theory to support its claim.

The Court agrees with Plaintiff that evidence that advertisers often ran "copycat" ads is highly relevant to the appropriateness of Plaintiff's response to this particular ad. The danger that the ad would be copied exists regardless of whether there is any evidence that it actually was. As discussed in greater detail below, Defendant is free to elicit testimony that there is no evidence that this

---

[1] In its own motion in limine, discussed in greater detail below, Plaintiff seeks to exclude testimony speculating whether anyone else viewed the ad.

4

particular ad was viewed by anyone else, or that any other advertisers actually copied it. Defendant's argument goes to the weight of the evidence rather than its admissibility.

### C. No. 3: To Exclude Evidence of Any Other Complaints Regarding The Connor Group's Advertising and Advertising Practices (Doc. #188)

Defendant also asks the Court to exclude evidence of other complaints regarding The Connor Group's advertising practices, including its alleged "over-posting" of advertisements on Craigslist. Plaintiff notes that the Court has already excluded such evidence in previous rulings. Accordingly, Defendant's motion is OVERRULED AS MOOT.

### D. No. 4: To Exclude Evidence of Settlement Efforts by the Parties and Any Monetary Value Assigned Thereto (Doc. #189)

Defendant next urges the Court to exclude all evidence, arguments, statements, suggestions, and references to settlement efforts undertaken by the parties. More specifically, Defendant seeks to exclude Plaintiff's sheet time entries related to efforts to resolve the matter before the Ohio Civil Rights Commission ("OCRC"), and any monetary value assigned thereto.[2]

---

[2] Defendant relies primarily on Federal Rule of Evidence 408(a), arguing that evidence related to settlement offers is inadmissible "to prove or disprove the validity or amount of a disputed claim." That Rule, however, is inapplicable to the question of the admissibility of Plaintiff's time sheets. It merely prohibits evidence of actual settlement offers, and evidence of conduct or statements made during settlement negotiations. Evidence of the amount of time expended in settlement negotiations falls outside the scope of Rule 408(a). The parties agree, however, that Rule 408(a) prohibits the introduction of evidence of the terms of any settlement discussions.

The parties disagree about whether time spent by Plaintiff attempting to resolve the matter before the OCRC is compensable. Defendant maintains that this is a non-compensable litigation expense. Plaintiff, however, has the better argument. In filing the OCRC complaint, and later attempting to resolve the matter before the OCRC, Plaintiff's employees diverted their time and attention from other matters. Such diversion of resources is compensable under the fair housing laws. The Court therefore OVERRULES Defendant's motion.

E. **No. 5: To Exclude Evidence of Time and Resources Expended by Miami Valley Fair Housing Center, Inc. After May 19, 2009 (Doc. #190)**

It is undisputed that the ad posted by The Connor Group on Craigslist on April 4, 2009, automatically expired on May 19, 2009, and there is no evidence that it was ever re-posted. Defendant therefore asks the Court to exclude any evidence or reference to time and resources expended by Plaintiff after May 19, 2009. It argues that, because any such claimed damages cannot be fairly traced to the ad, they are irrelevant, and should be excluded as misleading and prejudicial.

The Court rejects this argument. As Plaintiff explains, its recoverable damages are not frozen on the date the ad expired. If the jury finds that the claimed damages are fairly traceable to the ad, they are compensable. Plaintiff alleges that, to combat the discriminatory effects of this particular ad, it continued to divert its resources long after ad stopped running, and it continued to suffer from a frustration of its mission. The jury may, or may not, agree that the claimed damages are fairly traceable to the ad. However, there is no reason why Plaintiff

6

should not be permitted to introduce such evidence. Accordingly, the Court OVERRULES Defendant's request to exclude evidence regarding time and resources expended by Plaintiff after May 19, 2009.

    **F.**    **No. 6: To Exclude Evidence Regarding Licensure and Training Requirements Set Forth in O.R.C. § 4735.02 (Doc. #191)**

Defendant also asks the Court to exclude, as irrelevant and improper, all arguments, statements, allegations, and suggestions that The Connor Group was required to comply with the licensure requirements of Ohio Revised Code § 4735.02. Plaintiff has indicated that it does not plan to introduce any such evidence. Defendant's motion is therefore OVERRULED AS MOOT.

    **G.**    **No. 7: To Exclude Evidence Regarding November 12, 2009 Ohio Civil Rights Commission Probable Cause Finding (Doc. #192)**

Next, Defendant asks the Court to exclude evidence regarding the November 12, 2009, probable cause finding made by the Ohio Civil Rights Commission ("OCRC") concerning the ad in question. It notes that the Court previously excluded this evidence, concerned that the jury would give it too much weight. Plaintiff acknowledges that the Court has already ruled on this issue.[3] Defendant's motion is therefore OVERRULED AS MOOT.

    **H.**    **No. 8: To Exclude Evidence of Time Entries Associated with Dayton Daily News Inquiries (Doc. #194)**

Defendant also asks the Court to exclude, as irrelevant, evidence, statements, references or exhibits reflecting time expended by Plaintiff responding

---

[3] Defendant notes that, despite Plaintiff's lack of objection to Defendant's motion, the OCRC finding is still included in Plaintiff's list of trial exhibits.

to an inquiry from the Dayton Daily News.  Defendant argues that, despite Plaintiff's claim to the contrary, there is no basis to support a finding that those tasks are fairly traceable to the ad in question.  The inquiry in question was related to the newspaper's own advertising practices, and took place almost one year after The Connor Group's ad had expired on Craigslist.  Moreover, there is no evidence that the Dayton Daily News was even aware of the ad posted by The Connor Group.  John Zimmerman admitted at trial that the newspaper's inquiry was not about The Connor Group.  Trial Tr. at 81.

Plaintiff nevertheless maintains that the time entry at issue relates to its frustration of mission damages.  When asked to explain why time spent responding to the Dayton Daily News inquiry was included in the damages calculation, Zimmerman explained that the work he did with the newspaper "was related to what we were seeing in the marketplace like this ad that The Connor Group placed." *Id.* at 82.  Based on this testimony, it is possible that a jury could find that Plaintiff is entitled to compensation for time spent responding to the inquiry from the Dayton Daily News.  The jury will have to determine, however, whether time spent on this task is fairly traceable to the ad in question.  The Court therefore OVERRULES Defendant's motion.

I. **No. 9: To Exclude References to the Second Jury's Liability Finding [Jury's Finding that the Ad Violated Federal and State Fair Housing Laws] (Doc. #195)**

Defendant next asks the Court to exclude any statements, references or other evidence regarding the jury's finding that the ad violated federal and state

fair housing laws. It notes that, in sustaining Plaintiff's Motion for Partial New Trial, the Court has already held that this question is distinct and separable from the question of whether the posting of the ad was the proximate cause of harm to Plaintiff. Defendant maintains that evidence of the jury's finding concerning the discriminatory nature of the ad should therefore be excluded under Federal Rule of Evidence 403 as confusing, misleading and unfairly prejudicial.

The Court rejects this argument. Although this jury's task will be limited to determining the issues of proximate cause and damages, the jury cannot be expected to make that determination in a vacuum. It is only because the ad in question has been found to violate fair housing laws that this jury has the occasion to reach the issues of proximate cause and damages. As discussed below, the Court intends to instruct the jury that it has already been determined that the advertisement in question discriminates on the basis of sex and familial status, in violation of federal and state fair housing laws. The jury will be instructed that it cannot revisit that issue. The risk of confusion would be infinitely greater if the Court did not tell the jury that the advertisement has already been found to be discriminatory, because the jury would be judging the questions of proximate cause and damages in a vacuum. The Court therefore OVERRULES Defendant's motion.

J.   **No. 10: To Exclude New or Additional Evidence (Doc. #197)**

Finally, Defendant asks the Court to exclude "any new or additional evidence that was not presented in the first or second trial of this matter." Doc. #197, Page ID#7948. More specifically, Defendant argues that it would be unfairly

prejudicial if Plaintiff were permitted to bolster its claim with new evidence regarding time and resources expended in response to the ad, or new ways in which Plaintiff's mission was frustrated.

Plaintiff concedes that it would be unfair for either party to use evidence not previously produced in discovery, but argues that it is unreasonable to expect that questions and testimony will be exactly the same as it was in the previous trial. In its reply brief, Doc. #218, Defendant clarifies that it merely seeks to prevent Plaintiff from presenting new information, or from altering the presentation of testimony in a way that makes it inconsistent with prior testimony.

The Court will be in a much better position to rule on any objections to "new or additional evidence" in the context of the actual trial. The Court therefore RESERVES RULING on Defendant's request.

III. **Plaintiff's Motion in Limine (Doc. #193)**

A. **To Exclude Evidence of Content or Nature of the Illegal Advertisement**

Plaintiff maintains that the jury should be told only that the advertisement in question has been determined to discriminate on the basis of sex and familial status, in violation of federal and state fair housing laws. According to Plaintiff, if the jury is told of the exact content or nature of the advertisement, the jury might be inclined to second-guess the previous jury's liability finding and decide, on that basis, that no damages are warranted.

10

Plaintiff's argument lacks merit. The jury will be instructed that it has already been determined that the advertisement violates federal and state fair housing laws, and that the jury's *only* task is to determine the issues of proximate cause and damages. These instructions should cure any chance that the jury will second guess the previous liability finding.

Moreover, the Court agrees with Defendant that the jury will be misled and confused if the exact content of the advertisement is not disclosed. This jury is being asked to determine whether each line-item of damages claimed by Plaintiff is fairly traceable to this one specific advertisement. Therefore, the content of the ad is crucial, and directly relevant to the issues of proximate causation and damages. The Court therefore OVERRULES Plaintiff's motion to exclude evidence of the content of the advertisement.

### B. To Exclude Testimony Speculating Whether Others Saw the Illegal Advertisement

There is no evidence that anyone other than Plaintiff's employees saw the ad in question, no evidence that anyone was discouraged from responding to the ad, and no evidence that anyone received any complaints about the ad. Plaintiff correctly points out, however, that, in order to recover damages, it need not prove that anyone was actually turned away or was discouraged from responding to the ad. Regardless of how many people saw the ad, or complained about the ad, action taken by Plaintiff to combat its discriminatory effects may be compensable.

11

According to Plaintiff, because the number of people who saw the ad is completely speculative, it would be misleading and prejudicial to allow Defendant to argue that the lack of complaints is somehow relevant to the amount of damages claimed by Plaintiff.

Defendant disagrees. It argues that such evidence is relevant to the questions of proximate cause and damages. Plaintiff bears the burden of proving that the posting of the ad was the proximate cause of the damages it now seeks. The fact that there is no evidence that anyone other than Plaintiff's employees saw the ad, no evidence that the ad was ever re-posted, and no evidence that anyone ever complained about the ad goes to the reasonableness of Plaintiff's response to the ad, and the reasonableness of the claimed damages for diversion of resources and frustration of mission.

The Court agrees with Defendant that this evidence is relevant and admissible for that purpose. Plaintiff's motion is therefore OVERRULED. The jury will be instructed that, in order to recover damages, Plaintiff need not prove that others viewed the ad, were discouraged from submitting a lease application because of the content of the ad, or were turned away by Defendant. This should cure any risk that the jury will be misled.

### C. To Exclude Testimony about Plaintiff's Source of Funding

Finally, Plaintiff argues that evidence about the source or amount of its funding should be excluded as irrelevant, misleading and prejudicial. Defendant

12

has indicated that it does not intend to introduce any such evidence. Plaintiff's motion is therefore OVERRULED AS MOOT.

On a related note, however, Defendant has indicated that it plans to introduce evidence that Plaintiff is a non-profit organization, and has been given grants to perform ongoing and routine monitoring, education and other fair housing tasks. Defendant maintains that this evidence is directly relevant to the issues of proximate cause and damages, because the jury must be able to distinguish between actions taken by Plaintiff in its ordinary course of work and actions taken in specific response to the posting of the ad.

To the extent that Defendant intends to argue that tasks routinely performed by Plaintiff in connection with executing its duties under the terms of one or more grants, such as the monitoring of advertising, the filing of complaints of discrimination, or the creation of educational materials, are not compensable, this is incorrect. A fair housing organization is entitled to recover damages for diversion of its resources and frustration of its mission. Time spent attempting to combat the discriminatory effects of an advertisement pulls employees away from efforts to combat other housing discrimination in the community. Therefore, regardless of the nature of the task, Plaintiff may recover damages if it proves that the action it took was fairly traceable to the posting of the advertisement.

## IV. Incorporation of Previous Evidentiary Rulings

As set forth in the October 16, 2015, Scheduling Order, Doc. #183, counsel will be given the opportunity during the Final Pretrial Conference to renew their motions in limine previously ruled upon by the Court, without the necessity of counsel having to refile those motions.

## V. Conclusion

For the reasons set forth above, the Court:

### OVERRULES AS MOOT:

- Defendant's Motion in Limine No. 1 To Exclude Arguments, Statements and Evidence Relating or Referring to "Victims" of The Connor Group's Advertising Practices (Doc. #186);
- Defendant's Motion in Limine No. 2 To Exclude Other Advertisement Evidence (Doc. #187);
- Defendant's Motion in Limine No. 3 To Exclude Evidence of Any Other Complaints Regarding The Connor Group's Advertising and Advertising Practices (Doc. #188);
- Defendant's Motion in Limine No. 6 To Exclude Evidence Regarding Licensure and Training Requirements Set Forth In O.R.C. § 4735.02 (Doc. #191);
- Defendant's Motion in Limine No. 7 To Exclude Evidence Regarding November 12, 2009 Ohio Civil Rights Commission Probable Cause Finding (Doc. #192); and
- A portion of Plaintiff's January 14, 2016 Trial Motion in Limine (Doc. #193).

### OVERRULES ON THE MERITS:

- Defendant's Motion in Limine No. 4 To Exclude Evidence of Settlement Efforts by the Parties and Any Monetary Value Assigned Thereto (Doc. #189);
- Defendant's Motion in Limine No. 5 To Exclude Evidence of Time and Resources Expended by Miami Valley Fair Housing Center, Inc. After May 19, 2009 (Doc. #190);

- Defendant's Motion in Limine No. 8 To Exclude Evidence of Time Entries Associated with Dayton Daily News Inquiries (Doc. #194);
- Defendant's Motion in Limine No. 9 To Exclude References to the Second Jury's Liability Finding [Jury's Finding that the Ad Violated Federal and State Fair Housing Laws] (Doc. #195); and
- A portion of Plaintiff's January 14, 2016 Trial Motion in Limine (Doc. #193).

RESERVES RULING ON:

- Defendant's Motion in Limine No. 10 To Exclude New or Additional Evidence (Doc. #197).

Date: December 31, 2015

*[signature]*
WALTER H. RICE
UNITED STATES DISTRICT JUDGE

15